The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SECTRA COMMUNICATIONS AB,<br><br>Plaintiff,<br><br>v.<br><br>ABSOLUTE SOFTWARE, INC. and NETMOTION SOFTWARE, INC.,<br><br>Defendant. | Case No. 2:22-cv-00353-RSM<br><br>**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION AND ORDER** |

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("**ESI**") in this matter:

**A.      General Principles**

1.      An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

1

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

should be reasonably targeted, clear, and as specific as possible.

**B.     Definitions**

The following definitions apply to this Order:

1. "**Database**" means an electronic collection of structured data (often maintained in a non-custodial manner).

2. "**Family**" means a group of documents that are maintained as a single unit in the ordinary course of business (*e.g.*, an email and its attachments).

3. "**ESI**" or "**Electronic Document**" means electronically stored information as defined in FRCP 34.

4. "**Extracted Text**" refers to the result of the process by which content of an Electronic Document is electronically extracted during e-discovery processing.

5. "**Native Format**" means the default format of ESI created by its associated software program and also includes the export format of documents that are not maintained in a usable Native Format.

6. "**Optical Character Recognition**" or "**OCR**" refers to the result of the process by which a hard copy or non-searchable Electronic Document is scanned by a computer to capture text from the face of the document.

7. "**Privileged Information**" refers to information subject to a claim of attorney-client privilege, work-product protection, or other privilege or immunity.

8. "**Producing Party**" means any Party or non-Party Subpoena recipient to this proceeding who produces documents or information under this Order.

9. "**Receiving Party**" means any Party to this proceeding who receives documents or information under this Order.

**C.     ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

2

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

party[1] shall disclose:

    1.    <u>Custodians</u>. The five custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

    2.    <u>Non-Custodial Data Sources</u>. A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

    3.    <u>Third-Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

    4.    <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

    5.    <u>Foreign data privacy laws</u>. Nothing in this Order is intended to prevent either party from complying with the requirements of a foreign country's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679. The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

**D.**     **ESI Discovery Procedures**

    1.    <u>On-Site Inspection of Electronic Media</u>. Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

---

[1] "[E]ach party" refers to each entity identified as a plaintiff or defendant in this case. For example, "Absolute Software, Inc." is one party, and must identify five custodians. "NetMotion Software, Inc." is another party, and must separately identify five custodians. Nothing in this order shall preclude the list of custodians provided by a party from including individual(s) also listed as custodian(s) for another party, provided the individual(s) are among the five custodians most likely to have discoverable ESI in their possession, custody, or control for both parties.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

3

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

2. <u>Search Methodology</u>. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

    (a)    Prior to running searches:

        (i)    The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

        (ii)    The requesting party is entitled to, within 14 days of the producing party's disclosure, add no more than a total of 10 search terms or queries across all custodians to those disclosed by the producing party absent a showing of good cause or agreement of the parties.

        (iii)    The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query. A search that returns more than 700 unique documents, excluding families, is presumed to be overbroad.

        (iv)    After production: Within 21 days of the producing party notifying the receiving party that it has substantially completed the production of documents responsive to a request, the responding party may request no more than 10 additional search terms or queries.

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

4

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

The immediately preceding section (Section C(2)(a)(iii)) applies.

**E.     Production Format**

1.     Subject to the exceptions for documents to be produced in Native Format, documents will be produced as Bates-stamped tagged color PDFs with embedded text or image file format ("**Tiff**") images accompanied by an image load file, a data load file with fielded metadata, document-level extracted text for ESI, and OCR text for scanned hard copy documents and ESI that does not contain extractable text. The parties shall cooperate in good faith to produce documents in the format (PDF or Tiff) preferred by the requesting party where possible. Detailed requirements, including files to be delivered in Native Format, are below.

2.     <u>Naming</u>. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.

3.     <u>Document Unitization</u>.

(a)     Where documents with attachments are produced, they will be attached in the same manner as included in the original file. Unless documents contain solely Privileged Information, parties will produce complete Document Families where any portion of the Family contains relevant information.

(b)     Where the Producing Party converts paper documents into electronic format, distinct documents must not be merged into a single record, and single documents must not be split into multiple records.

(c)     Documents that are segregated or separated from other documents, whether by inclusion of binders, files, dividers, tabs, clips or any other method, will be produced in a manner that reflects these divisions.

4.     <u>De-duplication</u>. The parties will use industry standard MD5 or SHA hash values at

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

5

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

the Family level to globally deduplicate all files identified for production. Stand-alone Electronic Documents will not be compared to email attachments for de-duplication purposes. Hard copy documents containing handwritten notes will not be considered as duplicative of any other document. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, but the duplicate custodian information removed during the de-duplication process must be tracked in a duplicate/other custodian field in the database load file that is provided to the receiving party.

5. <u>Email Threading</u>. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Emails that include content in the BCC or blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or blind copy field. Upon reasonable request, the producing party will produce a less inclusive copy. However, where an earlier-in-thread (non-inclusive) email bears an attachment not contained within the most inclusive email(s), the earlier-in-thread email containing the attachment(s) will also be considered and, if responsive, produced with its attachment. Where an earlier-in-thread (non-inclusive) email bears content not contained within a later otherwise inclusive email, the earlier-in-thread email and any attachments will also be considered, and if responsive, produced. Additionally, all custodians who sent or received the lesser inclusive copies must be identified in a duplicate/other custodian field, as per the preceding paragraph, and metadata of lesser inclusive copies will be produced. The parties agree that if a party chooses to review and produce only inclusive emails, the party may not assert privilege over and withhold any entire inclusive email if only a portion of the thread could have been withheld had each message in the thread been considered individually. Such message threads shall be redacted and produced in part. Finally, message threads shall not be excluded from review or production as non-date responsive if any part of the thread falls within the agreed date range. Entire threads shall not be excluded solely because the inclusive(s) extend beyond the agreed date range.

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

6

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

6. <u>Production Delivery</u>. Productions shall be delivered via secure online data transfer or on an external hard drive if the size of a production makes online transfer impractical.

7. <u>Encryption</u>. To maximize the security of information in transit, the Parties shall encrypt any media on which documents are produced. In such cases, the Producing Party will transmit the encryption key or password and applicable instructions to the Receiving Party, upon receipt of the encrypted media.

8. <u>Tiff Image Requirements</u>.

   (a) Tiff images will be produced in black and white, 300x300 dpi Group IV single-page format and will be consecutively Bates-stamped.

   (b) Images will include the following content where present:

      (i) For word processing files (*e.g.*, Microsoft Word): Comments, "tracked changes," similar in-line editing and all hidden content.

      (ii) For presentation files (*e.g.*, Microsoft PowerPoint): Speaker notes, comments, and all other hidden content.

      (iii) For spreadsheet files (*e.g.*, Microsoft Excel – if applicable): Hidden columns, rows, and sheets; comments, and any similar in-line editing or hidden content.

9. <u>Native Production Requirements</u>.

   (a) Spreadsheet files (*e.g.*, Microsoft Excel and .csv files) shall be provided in Native Format with a single placeholder image bearing the Bates number and confidentiality designation.

   (b) The parties may use a Native File redaction tool (*e.g.*, "**Blackout**") to redact Privileged Information from documents produced in Native Format as long as the Receiving Party can easily identify the redactions and so long as the redactions are described in a privilege log.

   (c) When redaction of a spreadsheet is necessary in image format, a redacted full Tiff version may be produced if the spreadsheet is manually formatted for optimal printing. If the spreadsheet requiring redaction is not reasonably usable in Tiff format, the parties will meet-

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

7

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

and-confer to determine a suitable production format.

(d) Media files (*e.g.*, .mp3, .wmv, etc.) will be produced in Native Format with a single placeholder image bearing the Bates number and confidentiality designation.

(e) The parties will meet-and-confer to discuss a suitable production format for any proprietary or non-standard file types that require special software or technical knowledge for review, Databases and Database reports, and any document types that cannot be accurately rendered or reviewed in image format.

(f) The parties may request color copies or higher-resolution copies of any documents that cannot be accurately reviewed in black and white Tiff format. Reasonable requests for color documents should not be refused.

10. <u>Load Files</u>. A Concordance compatible data load file will be provided with each production volume containing a header row listing all metadata fields included in the volume. Image load files will be produced in Concordance/Opticon compatible format.

11. <u>Extract Text/OCR</u>.

(a) Electronically Extracted Text must be provided if available for documents collected from electronic sources. Text generated via OCR shall be provided for all documents that do not contain electronically extractable text (*e.g.*, non-searchable PDF files or JPG images), for documents redacted in image format, and hard copy documents. The parties will not degrade the searchability of documents as part of the document production process.

(b) Document text will be produced as separate, document-level text files and will not be embedded in the metadata load file.

(c) Text files will be named according to the beginning Bates number of the document to which they correspond.

(d) Text files (extracted and OCR) shall be in UTF-8.

(e) If a document is provided in Native Format, the text file will contain the Extracted Text of the native file.

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

8

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

        (f)    Confidentiality designations will be separately identified in a field in the load file, and shall not be included in the OCR. If there is a conflict between the confidentiality designation field in the load file and the confidentiality stamp applied to the document, the higher designation controls.

    12.    <u>Metadata Fields</u>. The parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size; file extension; original file path; date and time created, sent, modified and/or received; confidentiality designation; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

    13.    <u>Hard-Copy Documents</u>. If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will set forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**F.   Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

9

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved or produced:

(a) Deleted, slack, fragmented, or other data only accessible by forensics.

(b) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

(c) On-line access data such as temporary internet files, history, cache, cookies, and the like.

(d) Data in metadata fields that are frequently updated automatically, such as last-opened dates (*see also* Section (E)(5)).

(e) Back-up data that are duplicative of data that are more accessible elsewhere.

(f) Server, system or network logs.

(g) Data remaining from systems no longer in use that is unintelligible on the systems in use.

(h) Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

(i) Text messages.

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

10

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

(j)     Voicemail.

(k)     Social media data.

**G.     Privilege**

1.     A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. In addition to the requirements of Fed. R. Civ. P. 26(b)(5), privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than June 1, 2023.  A producing party shall also create a privilege log for all documents in which portions have been redacted.  The provisions of the foregoing paragraph apply, except that instead of a "unique identification number," the party shall identify the Bates number for the document that has been redacted. Per the parties' Joint Status Report dated May 4, 2022, the parties agree that there is no need to log privilege documents after July 23, 2021 for the '437 Patent and after March 9, 2022 for the '047 Patent. *See* Dkt. No. 91.

2.     Documents containing both Privileged Information and responsive non-Privileged Information will be produced with the Privileged Information redacted in such a way as to show the location of the redaction within the document.  .

3.     With respect to privileged or work-product information generated after the filing of the complaint, the parties are not required to include any such information in privilege logs.

4.     Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

11

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

5. <u>Non-Waiver</u>.

(a) Pursuant to Fed. R. Evid. 502(d), the production of any documents in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party, and its production shall not constitute a waiver of such protection. The Parties will not conduct an inquiry under FRE 502(b) to determine whether information was produced inadvertently. Instead, the Parties will determine inadvertence solely based on the good faith representation of the Producing Party. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

(b) Nothing herein shall prevent the Receiving Party from challenging the propriety of the privileged designation of any information claimed to have been inadvertently produced by submitting a challenge to the Court.

(c) Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

(d) Fed. R. Civ. P. 26(b)(5)(B) governs the proper procedure for the notification and return of Privileged Information when identified by the Producing Party.

(e) If a Receiving Party identifies what appears on its face to be Privileged Information, the Receiving Party is under a good-faith obligation to notify that Producing Party. Such notification shall not waive the Receiving Party's ability to subsequently contest any assertion of privilege or protection with respect to the information.

AGREEMENT REGARDING
DISCOVERY OF ELECTRONICALLY-
STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

12

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

Dated this 14th day of November, 2022.

| | |
|---|---|
| /s/ Christopher B. Durbin<br>Christopher B. Durbin (WSBA #41159)<br>COOLEY LLP<br>1700 Seventh Avenue, Suite 1900<br>Seattle, WA 98101-1355<br>Tel: (206) 452-8700<br>Fax: (206) 452-8800<br>Email: cdurbin@cooley.com<br><br>Heidi L. Keefe (*pro hac vice*)<br>Reuben H. Chen (*pro hac vice*)<br>Alexandra Leeper (*pro hac vice*)<br>COOLEY LLP<br>3175 Hanover St.<br>Palo Alto, CA 94304-1130<br>Tel: (650) 843-5000<br>Fax: (650) 849-7400<br>Email: hkeefe@cooley.com<br>Email: rchen@cooley.com<br>Email: aleeper@cooley.com<br><br>**ATTORNEYS FOR DEFENDANTS ABSOLUTE SOFTWARE, INC. AND NETMOTION SOFTWARE, INC.** | /s/ William R. Squires III<br>William R. Squires III, WSBA No. 4976<br>CORR CRONIN LLP<br>1015 Second Avenue, Floor 10<br>Seattle, Washington 98104-1001<br>Tel.: (206) 625-8600<br>Fax: (206) 625-0900<br>Email: rsquires@corrcronin.com<br><br>MCDERMOTT WILL & EMERY LLP<br>Stephen M. Hash (*pro hac vice*)<br>Kevin J. Meek (*pro hac vice*)<br>Syed K. Fareed (*pro hac vice*)<br>Samoneh Schickel (*pro hac vice*)<br>101 Congress Avenue, Suite 500<br>Austin, TX 78701-4076<br>Tel.: (512) 322-2587<br>Fax: (512) 322-3687<br>Email: shash@mwe.com<br>Email: kmeek@mwe.com<br>Email: sfareed@mwe.com<br>Email: sschickel@mwe.com<br><br>Jiaxiao Zhang (*pro hac vice*)<br>18565 Jamboree Road, Suite 250<br>Irvine, CA 92612-2565<br>Tel.: (949) 757-6398<br>Fax: (949) 851-9348<br>Email: jiazhang@mwe.com<br><br>**ATTORNEYS FOR PLAINTIFF SECTRA COMMUNICATIONS AB** |

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION
CASE NO. 2:22-cv-00353-RSM

13

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED this 1ˢᵗ day of December, 2022.

*[signature]*

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

277702417 v1

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY-STORED INFORMATION
CASE NO. 2:22-CV-00353-RSM

14

COOLEY LLP
1700 SEVENTH AVENUE, SUITE 1900
SEATTLE, WA 98101-1355
+1 206 452 8700