1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15

| | |
|---|---|
| SECTRA COMMUNICATIONS AB, | **Case No. C22-353-RSM** |
| Plaintiff, | |
| v. | **ORDER RE: CLAIMS CONSTRUCTION** |
| ABSOLUTE SOFTWARE INC., et al., | |
| Defendants. | |

16

## I.       INTRODUCTION

17

        This matter comes before the Court on the parties' Opening Claim Construction Briefs.

18

Dkts. #163 and #165.   Oral argument was held on June 9, 2023, pursuant to *Markman v.*

19

*Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995).   Having reviewed the briefing, and

20

having considered the arguments and evidence presented in the *Markman* Hearing, the Court

21

makes the following rulings regarding the patent claim terms at issue.

22

        As a preliminary matter, the Court denies Defendants' Motion to Strike Portions of Dr.

23

Zygmunt Haas's Rebuttal Declaration, Dkt. #157.   The Court agrees with Plaintiff that Dr.

24

Haas's opinions, as stated in the rebuttal declaration, were in response to the declaration of

25

Defendants' expert witness, Dr. Polish.   In any event, Defendants were given an adequate

26

opportunity at the hearing to address the opinions of Dr. Haas.

27
28

ORDER RE: CLAIMS CONSTRUCTION - 1

## II.     BACKGROUND

This is a patent infringement action originally filed in the Western District of Texas in 2021.  Dkt. #1.  Plaintiff Sectra Communications is a Swedish corporation and "pioneer in the fields of medical technology and encrypted communication systems."  *Id.* at 1.  Defendant Absolute Software is a Washington corporation with its principal place of business in Austin, Texas.  *Id.*  Defendant NetMotion was a wholly-owned subsidiary with its principal place of business in Seattle.  *Id.* at 2.  Defendants are accused of, *inter alia*, infringing Plaintiff's patent with their "NetMotion Mobility and NetMotion Platform" products and services.  NetMotion Mobility is "standards-compliant, client/server-based software that securely extends the enterprise network to the mobile environment" and "maximizes mobile field worker productivity by maintaining and securing their data connections as they move in and out of wireless coverage areas and roam between networks." *Id.* at 5–6.  NetMotion Platform is an integrated solution that offers among other features, "a VPN highly optimized for mobile access." *Id.* at 6.  Defendants have filed a counterclaim accusing Plaintiff of infringing their patent with their "Sectra Mobile VPN" product.  Dkt. #56.  The parties have recently stipulated to amending their pleadings.  *See* Dkts. #182 and #183.

As part of a corporate restructuring within Absolute, NetMotion was recently absorbed by Defendant Mobile Sonic, another wholly-owned subsidiary of Absolute.  Dkt. #137.  The NetMotion patent at issue was assigned to Mobile Sonic.

There are two patents at issue, U.S. Patent 7,797,437 ("437 Patent") asserted by Sectra Communications, and U.S. Patent 6,981,047 ("047 Patent") asserted by Defendant Mobile Sonic, Inc.  The parties submitted a Joint Claim Construction and Prehearing Statement that identifies a total of ten claim terms in dispute.  Dkt. #159.  In the 437 patent:

| Term | Sectra's Construction | Absolute Software's Construction |
|---|---|---|
| "mobile unit" | No construction necessary / Plain and ordinary meaning | Handheld mobile computing device, such as a PDA or mobile telephone |
| "session layer" | No construction necessary / Plain and ordinary meaning | Protocol layer acting directly on the transport-protocol layer |
| "[first/second] software components" | No construction necessary / Plain and ordinary meaning | Overlying software application with which the claimed invention interfaces |
| "traffic belonging to different [first/second] sockets in said [first/second] software components are directed by traffic intended for said [second/first] software components to different [second/first] sockets in said [second/first] software components uniquely corresponding to said different [first/second] sockets" | No construction necessary / Plain and ordinary meaning | Indefinite |
| "providing said first unit with one or more first communications hardware [with associated drive routines adapted to different communications networks]" | No construction necessary / Plain and ordinary meaning | Physically providing a first unit with one or more first communications hardware |

For the 047 patent:

| Term | Sectra's Construction | Absolute Software's Construction |
|---|---|---|
| "establishing access at the computing device with said further network or subnetwork" | "establishing access for the computing device to said further network or subnetwork" | No construction necessary / Plain and ordinary meaning |
| "participating in a DHCP process with said [further] network or subnetwork" | "said computing device participating in a DHCP process with said further network or subnetwork" / "said computing device participating in a DHCP | No construction necessary / Plain and ordinary meaning |

ORDER RE: CLAIMS CONSTRUCTION - 3

| | process with said network or subnetwork," or in the alternative, indefinite. | |
|---|---|---|
| "session priorities" | "values maintained at a server and indicating relative importance of one session compared to another session" | No construction necessary / Plain and ordinary meaning |
| "learning, at least in part in response to said DHCP process" | "learning, at least in part in response to analysis of information received during said DHCP process" | No construction necessary / Plain and ordinary meaning |
| "a listener that participates in a DHCP process with said further network or subnetwork" | Indefinite<br><br>(governed by 35 U.S.C. § 112(6)) | No construction necessary / Plain and ordinary meaning. not governed but 35 U.S.C. § 112(6) |

**1. 437 Patent**

The 437 Patent is titled "Method for Handover Between Heterogeneous Communications Networks." Dkt. #164-1. Claim 1 states, in part:

A method of maintaining communication between a first unit and a second unit, wherein said first unit is comprised of a geographically mobile unit and includes a first protocol stack adapted to as act between a first communications hardware used for communication via a first communications network and one or more first Software components, and wherein said second unit includes a second protocol stack adapted to act between a second communications hardware used for communication via a second communications network and one or more second software components, the method comprising the steps of:

providing said first unit with a first session layer which is adapted to act as an interface between said first protocol stack and said first software components;

providing said second unit with a second session layer which is adapted to act as an interface between said second protocol stack and said second software components…

…

Causing said first and said second session layers to use a common session protocol to ensure that traffic belong to different first sockets in said software components are directed by traffic

ORDER RE: CLAIMS CONSTRUCTION - 4

intended for said second Software components to different second sockets in said second Software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second Software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets;

providing said first unit with one or more first communications hardware with associated drive routines adapted to different communications networks....

*Id.* at 13.

**2. 047 Patent**

The 047 Patent is titled "Method and Apparatus for Providing Mobile and Other Intermittent Connectivity in a Computing Environment." Dkt. #164-2. Claim 1 of the 047 Patent begins:

A method for enabling Secure data communication with a computing device that roams among plural data communication networks or Subnetworks of the type that carry Internet Protocol (IP) data...

*Id.* at 58. The Court will not recite all of the claims here. One key portion is:

A System for enabling Secure data communication comprising...
A listener that participates in a DHCP process with said further network or subnetwork...

*Id.* at 60.

### III.     DISCUSSION

**A. Claim Construction Principles**

Patent claim construction is a question of law for the Court, even if the case is designated to go to a jury trial, but it may have underlying factual determinations that are now reviewed for clear error. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837, 190 L. Ed. 2d 719 (2015); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en

banc), *aff'd*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).  After the claims have been properly construed, the fact-finder will compare the claims to the allegedly infringing product or process.  The comparison is conducted on an element-by-element basis.

When interpreting claims, a court's primary focus should be on the intrinsic evidence of record, which consists of the claims, the specification, and the prosecution history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-17 (Fed. Cir. 2005) (en banc).  The Court should begin by examining the claim language.  *Id.* at 1312.  Claim language should be viewed through the lens of a person of "ordinary skill in the relevant art at the time of the invention."  *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1283 (Fed. Cir. 2005).  A court should give the claim's words their "ordinary and customary meaning."  *Phillips*, 415 F.3d at 1312-13 (quotation omitted).  In construing a claim term's ordinary meaning, the context in which a term is used must be considered.  *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).

However, the claims "must be read in view of the specification, of which they are a part."  *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979).  Additionally, the doctrine of claim differentiation disfavors reading a limitation from a dependent claim into an independent claim.  *See InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012).  The specification can offer "practically incontrovertible directions about a claim meaning."  *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).  "When consulting the specification to clarify the meaning of claim terms, courts must take care not to import limitations into the claims from the specification."  *Id.*   "[A]lthough the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into claims when the claim language is broader than such embodiments."  *Tate Access Floors, Inc. v. Maxcess Techns., Inc.*, 222 F.3d 958, 966

(Fed. Cir. 2000) (quotation omitted).  "By the same token, the claims cannot enlarge what is patented beyond what the inventor has described in the invention."  *Abbott Labs.*, 566 F.3d at 1288 (internal quotation omitted).  "Likewise, inventors and applicants may intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim."  *Id.* at 1288.

In addition to the specification, a court should consider the patent's prosecution history, which consists of "the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent."  *Phillips*, 415 F.3d at 1317.  However, because the prosecution represents an "ongoing negotiation" rather than the "final product" of the negotiation, "it often lacks the clarity of the specification and thus is less useful for claim construction purposes."  *Id.*  Consulting the prosecution history can, however, be helpful in determining whether the patentee disclaimed an interpretation during prosecution.  *Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1296 (Fed. Cir. 2005).  "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution."  *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006); *see also Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'").

Although courts are permitted to consider extrinsic evidence, like expert testimony, dictionaries, and treatises, such evidence is generally of less significance than the intrinsic record.  *Phillips*, 415 F.3d at 1317 (citing *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).  Extrinsic evidence may not be used "to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id*. at 1324.

ORDER RE: CLAIMS CONSTRUCTION - 7

"A patent is invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2123 (2014).   "Indefiniteness is a legal determination; if the court concludes that a person of ordinary skill in the art, with the aid of the specification, would understand what is claimed, the claim is not indefinite." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 (Fed. Cir. 2015) (citation omitted) (finding the challenged claim term not indefinite). Patents are presumed valid, and a challenger must prove invalidity by clear and convincing evidence. *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003).   If a single claim limitation is indefinite, the entire claim is invalid.

### B.  437 Patent Terms for Construction

#### 1.  *"Mobile Unit"*

"Mobile unit" is not defined in the patent.  The term is often preceded by the word "geographically," as in "geographically mobile unit."  According to Plaintiff, no construction is necessary, and the Court should give these words their plain and ordinary meaning as understood by a Person of Ordinary Skill in the Art ("POSITA").  Defendants ask that this term be construed to mean precisely a "handheld mobile computing device, such as a PDA or mobile telephone."  At the hearing, Defendants highlighted various unusual viewpoints of Plaintiff's expert witness as if they were being argued by Plaintiff in Court—*e.g.*, that a mobile unit need not be turned on when it is travelling, or that it could be any computing device such as a desktop computer so long as it is in transit.  The Court is not particularly concerned with how this term was stretched in deposition, or will be stretched in some later stage of this case. Focusing on the arguments of the parties and the intrinsic evidence, the Court finds that this

term is readily understandable to a POSITA.   Defendants ask the Court to read into the definition a limitation, "handheld," found in one embodiment; this is clearly contrary to law and unwarranted in this case.   No construction is necessary and the Court will give this term its plain and ordinary meaning.

   2.   *Session Layer*

   This term is expressly defined in the patent under the section "Description of the Prior Art."  *See* Dkt. #164-1 at 7.   The parties agreed at the hearing that the Court can adopt that definition if it chooses to do so.   This term will be construed as stated in the patent: a "protocol layer acting directly on the transport-protocol layer."

   3.   *Software Components*

   Plaintiff argues convincingly that a POSITA would understand in the context of this patent that "software" can refer to programs and applications. The proposed construction by Defendants omits "programs."   When the Court pointed this out to the Defense at the hearing, counsel offered to amend their proposed construction to include programs.   The Court finds that Defendants' proposed construction needlessly over-describes this term, which is already understandable to a POSITA and needs no construction.

   4.   *Traffic… directed by traffic…*

   Defendants' position is that this very long term is indefinite, or more precisely that the concept of "traffic… directing traffic" is "nonsensical."  *See* Dkt. #165 at 8.   Defendants argue this is contrary to the more sensical understanding that "computing devices and associated software (such as session layers, session protocols, and transport protocols) generate traffic, determine its destination address, and transmit traffic into the network, thereby literally 'directing' where the traffic is sent."   Dkt. #165 at 11.   At the hearing, however, Plaintiff

presented adequate evidence for the Court to understand this term.  This term uses simple language to characterize a key and novel aspect of the invention.  The parties agree in essence that "traffic" is data exchanged between communication devices. The confusion apparently arises when considering that the path taken by traffic between sockets directs subsequent traffic.  The Court is not confused.  To use an automobile metaphor: when you are driving around trying to find a popular concert venue, you might follow the traffic ahead of you to see where everyone is going, and that traffic "directs" where you go.  You and the cars behind you are traffic, the cars in front of you are traffic too.  The traffic that successfully found the concert venue, in a sense, directs the subsequent traffic, even though of course the cars are driven by steering wheels, connected to hands, connected to brains.  That the traffic in this patent is generated and transmitted from source to destination by hardware and software does not render the concept of traffic directing traffic indefinite.  This could be readily understood by a POSITA, and indeed Plaintiff argues that this was understood by Defendants' expert witness. Defendants have failed to demonstrate indefiniteness by clear and convincing evidence.  The Court finds that this term is sufficiently clear to a POSITA to warrant a finding that no construction is necessary.

> 5.  *Providing said first unit with one or more first communications hardware…*

This is another example where Defendants' construction attempts to inject limitations that are not justified.  Defendants initially ask to have the term construed as "physically providing…"  At the hearing, their position shifted to no longer needing the word "physically." Based on the position of Defendants at the hearing, and the remainder of the record, the Court again finds that this term is readily understandable to a POSITA and that no construction is necessary.

### C.  047 Patent Terms for Construction

1.  *Establish access at the computing device…*

Plaintiff's proposed construction unnecessarily changes "at" and "with" to the words "for" and "to."  This construction should be rejected because courts "do not rewrite claims." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).  The claim term is clear enough to a POSITA.  Plaintiff does not address this term in its response brief and did not address it at the hearing.  No construction is necessary.

2.  *Participating in a DHCP process…*

Plaintiff wants to limit this term by requiring that the DHCP process is occurring at "said computing device" rather than "another computing device."  Again, that adds an unnecessary limitation, because, as demonstrated in Defendants' briefing, the DHCP process always occurs on a computing device, and may occur on more than one at the same time.  A DHCP process requires the participation of "said computing device," and a router or DHCP server to allocate an IP address to the said computing device.  Plaintiff does not address this term in its response brief and did not address it at the hearing.   No construction is necessary.

3.  *Session Priorities*

Plaintiff's position of requiring "values [be] maintained at a server" improperly reads in a limitation from a preferred embodiment.  *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, 805 F.3d 1102, 1109- 10 (Fed. Cir. 2015).  Plaintiff does not address this term in their response brief and did not address it at the hearing. No construction is necessary.

4.  *Learning, at least in part in response to said DHCP process*

Plaintiff's construction adds additional language without justification.  The Court agrees with Defendants that a POSITA "would understand that the plain and ordinary meaning of

1    'learning' can encompass analysis without requiring analysis as a separate method step."  Dkt.

2    #165 at 24.  Plaintiff does not address this term in their response brief and did not address it at

3    the hearing.  No construction is necessary.

4                5.   *A listener that participates in a DHCP process…*

5            This is the only term from the 047 patent addressed in Plaintiff's response brief and

6    discussed at the hearing.  The parties dispute whether this a means-plus-function term.  Means-

7    plus-function claiming occurs when a claim term is drafted in a manner that invokes 35 U.S.C.

8    § 112(f) (previously § 112, ¶ 6).  *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347-48

9    (Fed. Cir. 2015). Under this provision, an inventor may express a claim element "as a means or

10   step for performing a specified function." 35 U.S.C. § 112(f).  Means-plus function claims

11   allow the inventor to claim his invention in terms of the function performed, as long as he

12   discloses in the specification the structure that performs the associated function. *See Med.*

13   *Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003).

14   Plaintiff argues that the term here is governed by 35 U.S.C. §112(f).

15           To figure out if a term is means-plus-function, the Federal Circuit follows a rebuttable

16   presumption: if the claim term uses the word "means," it is presumed to be a means-plus-

17   function limitation, but if the claim term does not use "means," it is presumed not to be.

18   *Williamson*, 792 F.3d at 1348. The ultimate determination, however, depends upon whether the

19   claim would be understood by persons of ordinary skill in the art to give a sufficiently definite

20   meaning for structure claimed. *Id*.

21           Plaintiff argues that this term is governed by 35 U.S.C. §112(f) and has a function, but

22   no structure, and is therefore indefinite.  Defendants say that Plaintiff's assertion of

23   indefiniteness under 35 U.S.C. § 112(f) is meritless because a POSITA would know that "a

ORDER RE: CLAIMS CONSTRUCTION - 12

listener" is structural within the context of the art of computer programming and the 047 patent specification.  Because the term does not recite "means for," there is a presumption that it is structural and not functional, and Plaintiff must identify some evidence to overcome that presumption.  Plaintiff argues that the term "listener" is itself functional because it describes someone/something that performs the function of listening, and points to the patent which uses the phrase "listener process."  Dkt. #163 at 28–29.  Defendants' position is that "listener" refers to well-known code structure understandable to a POSITA—a listener code structure commands a computer to listen on a port for traffic on the network.  Despite the -er suffix and the word "process," the remainder of the intrinsic evidence conveys that this is code structure. Plaintiff fails to overcome the presumption that this is structural and not functional. Accordingly, the Court finds that 35 U.S.C. §112(f) does not apply.  This term is sufficiently clear to a POSITA and no construction is necessary.

## IV.    CONCLUSION

The Court hereby ORDERS that Defendants' Motion to Strike Portions of Dr. Zygmunt Haas's Rebuttal Declaration, Dkt. #157, is DENIED.  This Court has construed the disputed claim terms in this case as set forth above, and the Clerk is directed to send a copy of this Order to all counsel of record.

DATED this 21st day of June, 2023.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER RE: CLAIMS CONSTRUCTION - 13