UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECTRA COMMUNICATIONS AB et al., <br><br> Plaintiffs, <br><br> v. <br><br> ABSOLUTE SOFTWARE, INC., et al., <br><br> Defendants. | Case No. C22-353RSM <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss claims two through seven of Plaintiffs' Amended Complaint. Dkt. #202. Plaintiffs have filed an opposition brief. Dkt. #235. No party has requested oral argument. For the reasons stated below, the Court GRANTS IN PART the Motion and dismisses claims two through seven with leave to amend.

## II. BACKGROUND

The Court will accept all facts stated in the Amended Complaint, Dkt. #186, as true for purposes of this Motion. The Court will focus its discussion on the facts that support the claims at issue and not the patent claims. Although the pleading and briefing were filed under seal with redacted public versions, the Court has determined it to be in the public interest to issue its orders in this case without seal or redactions. The Court has determined that the quotes below from the Amended Complaint can be published. The Court has taken every effort to maintain

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 1

the stated interests of the parties in redacting the Amended Complaint as weighed against the interests of the public and the need for the Court to discuss the issues in this case.

This is a patent infringement action originally filed in the Western District of Texas in 2021.  Dkt. #1.  An Amended Complaint was filed in this District on June 12, 2023, adding for the first time the claims at issue.  Dkt. #186.

Plaintiff Sectra Communications is a Swedish corporation and "pioneer in the fields of medical technology and encrypted communication systems." *Id.* at 2.  Plaintiff Columbiatech, Inc. is a wholly owned U.S. subsidiary of Sectra.  *Id*.  Defendant Absolute Software is a Washington corporation with its principal place of business in Seattle, Washington.  *Id*.  Defendant Mobile Sonic (formerly NetMotion Wireless) is a wholly owned subsidiary of Absolute with its principal place of business in Seattle.  *Id*.

Defendants are accused of, *inter alia*, infringing Plaintiffs' patent with their "NetMotion Mobility and NetMotion Platform" products and services.  NetMotion Mobility is "standards-compliant, client/server-based software that securely extends the enterprise network to the mobile environment" and "maximizes mobile field worker productivity by maintaining and securing their data connections as they move in and out of wireless coverage areas and roam between networks." *Id*. at 14.  NetMotion Platform is an integrated solution that offers among other features, "a VPN highly optimized for mobile access."  *Id*.  Defendants filed a counterclaim accusing Plaintiff of infringing their patent with their "Sectra Mobile VPN" product.  Dkt. #56.

As part of a corporate restructuring within Absolute, NetMotion was absorbed by Defendant Mobile Sonic, another wholly-owned subsidiary of Absolute.  Dkt. #137.  The NetMotion patent at issue was assigned to Mobile Sonic.

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 2

In addition to the infringement claims, Plaintiffs allege that NetMotion "[s]ince 2014 and earlier" orchestrated a campaign to malign Sectra's products and company by making false and/or misleading statements to actual and potential customers. *Id*. at 5.

According to the Amended Complaint, NetMotion and Sectra (or Sectra's predecessor) were "direct competitors in… the field of mobile VPN products that provide session and application persistence technology." *Id*. at 5. NetMotion's internal documents and emails indicate a "longstanding strategy" to eliminate competition from the market. *Id*. NetMotion had a "competitive lab" that, *inter alia*, "intentionally violated and caused its employees and third parties to violate the applicable software license agreements by acquiring and misusing the competitors' products." *Id*. at 6. NetMotion's employees then tested the products "under fabricated, unfavorable and unfair testing conditions to ensure that the competitor's products did not perform favorably compared to NetMotion's products." *Id*. NetMotion shared these results with actual and potential customers of its competitors in an effort to capture their business. *Id*.

At some point NetMotion hired one of Columbiatech's engineers who is accused of transmitting confidential and proprietary information. *See id*. at 7–8. The narrative of the Amended Complaint indicates that this took place prior to September 2013. *See id*. at 9.

The Amended Complaint indicates that the biased testing by NetMotion of Columbiatech's product began in November of 2013. *See id*. False and/or misleading statements were made by NetMotion employees to a customer in April of 2018, specifically that Columbiatech did not offer "traffic optimization, management, and persistence." *Id*. at 11. Internal emails allegedly indicate NetMotion knew Columbiatech's product did offer those things. *Id*. No subsequent examples of Defendants' false and/or misleading statements are offered.

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 3

The final paragraph of alleged facts, prior to the recitation of causes of action, states "[t]o this day, NetMotion and Absolute have continued usurping Sectra's market share by marketing the NetMotion/Absolute software as being 'similar to the Columbitech solution' while also misappropriating Sectra's confidential and proprietary information." *Id*. at 12. To support this assertion, Plaintiffs cite to an alleged January 2023 communication between NetMotion and a potential customer with the quoted phrase "similar to the Columbiatech solution." *Id*.

In claims two through six, Plaintiffs allege false advertising, defamation, violation of Washington's Consumer Protection Act, and tortious interference with a contractual relationship or business expectancy, and that "Sectra, its predecessor, and its subsidiary Columbitech Inc., did not know and could not have known about NetMotion's false, misleading and deceptive statements until NetMotion produced its documents in the ongoing litigation." *Id*. at 16. Plaintiffs allege in claim seven that NetMotion breached its End User License Agreement when it downloaded Plaintiffs' product for comparison testing. *Id*. at 23–24.

Defendants brought this Motion to Dismiss on July 10, 2023. Dkt. #202. Defendants argue that the above claims are time-barred and that they otherwise fail to state a claim under Rule 12(b)(6).

### III.   DISCUSSION

#### A. Legal Standard

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual

allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B. Analysis**

**1. Timeliness of claims**

Defendants first argue that claims two through seven concern events from five or more years ago and should be dismissed as untimely.  Indeed, the Amended Complaint clearly focuses on bad acts prior to 2018. One razor-thin reference is made to a January 2023 communication.  *See* Dkt. #186 at 12 ("[t]o this day, Net Motion and Absolute have continued usurping Sectra's market share by marketing the NetMotion/Absolute software as being 'similar to the Columbitech solution'").  In response to the instant Motion, Plaintiffs point to this 2023 allegation as the last bad act in a string of actions, citing cases where a last act allows all previous acts to form the basis for a timely claim.  Defendants reply that "[t]he Amended Complaint does not allege how this solitary email underlies Claims 2-7, nor do Plaintiffs argue

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 5

that this email was necessary to form a complete and present cause of action." Dkt. #243 at 7. The Court need not delve into the case law cited by the parties. Plaintiffs have failed to adequately argue how their cited cases support the application of the last act principle to these allegations, or to explain how this one communication with its vague wording could even trigger liability for any of their claims. Accepting all facts in the alleged complaint as true, and making all inferences in the light most favorable to Plaintiffs, the Court concludes that this single paragraph referencing a January 2023 communication cannot rescue the otherwise clearly untimely claims two through seven.

Plaintiffs also argue that the discovery rule should apply because they did not and could not have discovered Defendants' previous bad acts until internal records were produced in discovery. Under Washington law, "[t]he general rule is that 'a cause of action accrues and the statute of limitations begins to run when a party has the right to apply to a court for relief.'" *Shepard v. Holmes*, 185 Wn. App. 730, 739, 345 P.3d 786 (2014) (quoting *O'Neil v. Estate of Murtha*, 89 Wn. App. 67, 69-70, 947 P.2d 1252 (1997)). However, claims of fraud are "not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." RCW 4.16.080(4). Additionally, in an exception to the general rule of accrual, Washington courts apply the discovery rule "where injured parties do not, or cannot, know they have been injured." *Shepard*, 185 Wn. App. at 739 (quotation omitted). Under the discovery rule, "a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action." *Shepard*, 185 Wn. App. at 739 (quoting *Green v. Am. Pharm. Co.*, 86 Wn. App. 63, 66, 935 P.2d 652 (1997), *aff'd*, 136 Wn.2d 87, 960 P.2d 912 (1998)). "[W]hen a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 6

scope of the actual harm." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1095-96 (W.D. Wash. 2011). "The plaintiff is charged with what a reasonable inquiry would have discovered." *Id*. at 1096.

Plaintiffs, in arguing that the discovery rule applies here, cite to a case from this district quoting Washington law. Dkt. #235 at 11 (citing *Pruss v. Bank of Am. NA*, 2013 WL 5913431, at *2 (W.D. Wash. Nov. 1, 2013). Plaintiffs cite to *Pruss* for the proposition that "[t]he question in applying the discovery rule is when did the plaintiff know of the relevant facts." *Id*. However, *Pruss* goes on to state that in order to take advantage of the discovery rule, "a plaintiff must show there were impediments to earlier prosecution of the claim, including the reasons the claimant did not know of the cause of action, the means used to keep him ignorant, and how he first obtained knowledge of the relevant facts." 2013 WL 5913431, at *2 (citing *Douglass v. Stanger*, 101 Wn. App. 243, 256, 2 P.3d 998 (2000)).

Plaintiffs plead identical language under each claim: that they "did not know and could not have known about NetMotion's false, misleading and deceptive statements until NetMotion produced its documents in the ongoing litigation." Dkt. #186 at 16, 18, 19, 20, 22, and 24. This does not satisfy the above standards, because Plaintiffs have not pleaded any impediments to earlier prosecution of these claims. The Court and Defendants are left in the dark as to the reasons Plaintiffs did not know of these causes of action or the means used to keep Plaintiffs ignorant. Furthermore, Plaintiffs have failed to allege they could not have discovered these claims earlier through due diligence.

Such failings with the pleading could be excused if Plaintiffs successfully explained these points in briefing. Plaintiffs argue that much of what Defendants did was in their secret "lab." But the actions that give rise to the causes of action—communications with Plaintiffs'

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 7

potential customers—were not internal actions, and the effect on Plaintiffs' business was presumably something that Plaintiffs could have become aware of with reasonable diligence. The Court does not find that their claims *cannot* be brought, only that they are insufficiently pleaded and that Plaintiffs have done little in briefing to convince the Court that these claims can survive this affirmative defense in the future. Nevertheless, the Court cannot say that these deficiencies cannot be corrected and will grant leave to amend.

Plaintiffs' attempts to apply equitable tolling and equitable estoppel share the same fate due to insufficient allegations in the Amended Complaint. Plaintiffs do not, *e.g.*, plead that Defendants took any subsequent action to prevent Plaintiffs from learning of these claims.

### 2. False Advertising Claim

To successfully plead a false advertising claim under the Lanham Act, a plaintiff must show: "1) in its ... advertisements, defendant made false statements of fact about its own product; 2) those advertisements actually deceived or have the tendency to deceive a substantial segment of their audience; 3) such deception is material, in that it is likely to influence the purchasing decision; 4) defendant caused its falsely advertised goods to enter interstate commerce; and 5) plaintiff has been or is likely to be injured as the result of the foregoing either by direct diversion of sales from itself to defendant, or by lessening of the good will which its products enjoy with the buying public." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).

Further, a false advertising claim under 15 U.S.C. 1125(a) that necessarily constitutes fraud may be subject to the heightened pleading requirements of Rule 9(b). *A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, No. C14–1160JLR, 2014 WL 5365514, at *7-8 (W.D. Wash. Oct. 21, 2014).

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 8

The Amended Complaint, after discussing at length Defendants' internal efforts to discredit Plaintiffs' software, eventually alleges Defendants made specific false statements about Plaintiffs' software to a specific customer. These statements are not puffery. Defendants' Motion argues that the Amended Complaint fails to cite to or attach "any exhibit as support" for these allegations. Dkt. #202 at 13. Such is not required at the pleading stage. The Court is convinced that the pleading plausibly alleges this cause of action, even under the heightened pleading requirements of Rule 9(b), and is otherwise adequate (except for the timeliness issues above). If Plaintiffs can amend to correct the timeliness issues, any other flaws with this claim are best addressed at summary judgment or trial.

### 3. Defamation Claims

Defendants contend Plaintiffs fail to allege they published a defamatory statement about Plaintiffs' products. Defendants make several arguments better suited to the summary judgment or trial phases of this case. For example, Defendants argue that Plaintiffs fail to cite to an exhibit that shows defamation—but, of course, they are permitted to make allegations at this stage without exhibits proving their claims. Defendants argue that the alleged defamatory statements were made to a customer about a competitor and therefore invite "exaggeration" with an audience that expects it. Dkt. #202 at 17. That could be the case. The nature of the communications is a fact-based inquiry. The Court cannot assess the strength of Plaintiffs' evidence at this stage and must interpret all facts in favor of the nonmoving party. The Court certainly will not be ruling on genuine disputes of fact.

Defendants' strongest point is as follows:

> As for the third and "most crucial" *Dunlap* factor, Plaintiffs point to nothing in the allegedly false statements that suggests that Defendants had access to "undisclosed" information. *Miller*, 2023 WL 2428144, at *9-10 (even where audience at first "could have

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 9

> believed" that defendants had undisclosed information, their independent access to the facts undercut argument that statements were actionable). [The potential customer] easily could have referred to any of Columbitech's publicly available materials, such as its website, or asked Columbitech directly, to determine what services and products it offered or not. *See Life Designs Ranch, Inc. v. Sommer*, 191 Wash. App. 320, 332 (2015) ("While Mr. Sommer incorrectly described Life Designs as being located in western Washington, this statement was not based on undisclosed facts. Rather, Life Designs' official website states it is located in Cusick, Washington, which is on the eastern side of the state"). There is no implication in the allegedly defamatory statements that Defendants' assessment of Columbitech was based on intel that was unique to NetMotion. *See Miller*, 2023 WL 2428144, at *9-10.

*Id*. at 18 (citing *Dunlap v. Wayne*, 105 Wn.2d 529, 539 (1986)). In Response, Plaintiffs state that "[u]nder NetMotion's hypothetical, it is unclear how [the potential customer], or any of the potential or actual customers NetMotion published the false statements to, could have known about 'the facts underlying' NetMotion's false statements—*e.g.*, the improper acquisition of Columbitech's software and the fabricated test conditions and test results—or how they could have 'judge[d] the truthfulness' of the false statements themselves, when (i) they weren't allowed to perform any testing on Columbitech's software and (ii) none of this information has ever been made publicly available." Dkt. #235 at 22. The Court continues to find that the pleading is sufficient to proceed but cautions that the only clearly identified defamatory statements in the pleading appear to assert falsehoods that could easily be cleared up by referencing Columbitech's publicly available materials—the sort of thing that a potential customer would do. This could pose a significant hurdle to pursuing these claims.

   **4. CPA Claim**

  The Washington Consumer Protection Act ("CPA") requires a plaintiff alleging unfair competition to sufficiently plead "(1) … an unfair or deceptive act or practice, (2) in trade or commerce, (3) that impacts the public interest, (4) resulting in injury to business or property,

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 10

and (5) a causal link between the unfair or deceptive practice and the injury suffered." RCW 19.86.020; *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784–85 (1986).

Defendants only address the public interest prong.  The Amended Complaint barely discusses this: Defendants' statements were "unfair, deceptive, and had the capacity to deceive a substantial portion of the relevant public," and Defendants' statements "continue to damage the public interest at least because [Plaintiffs] products relate to the field of computer network security. The public has a vested interest in having access to secure networks over which they can communicate." Dkt. #186 at 20–21.  Defendants deem this speculative and lacking in facts that show how other members of the public could be injured in the same fashion, or that there is a pattern that could affect the public.  Dkt. #202 at 19–20.

The Court agrees that the pleading of the CPA claim is too thin.  The allegations concern private communications between businesses that could, at most, affect which competing product is selected by a business customer with no clear impact on the public based on that choice. Plaintiffs' response brief argues that other businesses like theirs may have been attacked by Defendants in a similar fashion, citing to facts in attached exhibits.  Dkt. #235 at 24.  This will not serve as a basis for the existing pleading to survive dismissal.  This claim will be dismissed with leave to amend.

       **5. Tortious Interference with a Contractual Relationship/Business Expectancy**

A claim of tortious interference with a contractual relationship or business expectancy under Washington law requires Plaintiffs to plead: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 11

expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnt'y. Medical Bureau, Inc.*, 131 Wn.2d 133, 930 P.2d 288, 300 (1997).

Defendants argue Plaintiffs fail to allege that Defendants knew of Plaintiffs' contractual relationships or expectancies and that they caused a breach thereof. Dkt. #202 at 20–21. The Court disagrees; the pleading contains sufficient facts demonstrating knowledge of and intent to interfere with Plaintiffs' relationships with two potential customers. *See* Dkt. #235 at 25–26 (citing the Amended Complaint). Plaintiffs sufficiently allege that they lost business and were damaged because of Defendants' interference. This claim will not be dismissed on this basis.

### 6. The EULA Claim

Defendants argue that Plaintiffs fail to allege that NetMotion was a party to the licensing agreement or breached any of its terms. Dkt. #202 at 23. The Court finds that the briefing from both sides is thin on this subject, as are the facts. Essentially, Plaintiffs allege that Defendants had an employee use subterfuge in acquiring Plaintiffs' software and accepting the End User License Agreement. The Amended Complaint then alleges that Defendants breached the Agreement by testing the software and by transmitting the software to other employees. Whether any of that happened is a question for a later day. Accepting all facts alleged in the complaint as true, and making all inferences in the light most favorable to the non-moving party, this claim will survive dismissal.

### 7. Leave to Amend

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber, supra*. Plaintiffs plead

ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS - 12

these claims for the first time in this amended complaint. The Court has determined that allegations of additional facts could be made consistent with the existing pleading, and that this could cure the above deficiencies. Accordingly, the Court will dismiss these claims as stated above with leave to amend.

## IV.  CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss, Dkt. #202, is GRANTED IN PART AND DENIED IN PART as stated above. Plaintiffs are granted leave to amend within the next thirty (30) days. Failure to amend by that point will result in claims two through seven being dismissed with prejudice. The Court further finds good cause to GRANT Defendants' Motion to Seal, Dkt. #241. Defendants' Reply brief, Dkt. #243, is to remain under seal.

DATED this 8th day of January, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE