THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SECTRA COMMUNICATIONS AB and COLUMBITECH, INC.,

Plaintiffs,

v.

ABSOLUTE SOFTWARE, INC. and MOBILE SONIC, INC.,

Defendants.

Case No. 2:22-cv-00353-RSM

**DEFENDANTS' MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF PLAINTIFFS' EXPERTS MATTHEW B. SHOEMAKE AND JEFFREY S. ANDRIEN RE APPORTIONMENT**

**NOTE ON MOTION CALENDAR:**
AUGUST 30, 2024

Complaint Filed: July 23, 2021
Trial Date: December 2, 2024



COOLEY LLP
3175 HANOVER STREET
PALO ALTO, CA 94304
(650) 843-5000

## TABLE OF CONTENTS


| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | LEGAL STANDARD | | | 1 |
| III. | ARGUMENT | | | 2 |
| | A. | Dr. Shoemake's Improper "Technical Apportionment" Should Be Excluded | | 2 |
| | | 1. | Dr. Shoemake does not provide a technical assessment in his apportionment analysis and is not qualified to opine on economic assessments of product features. | 2 |
| | | 2. | Dr. Shoemake's opinions are not based on sufficient facts or data but are instead derived without justification from two different marketing (not technical) descriptions. | 3 |
| | | 3. | Dr. Shoemake's opinions are not the product of reliable principles and methods and do not reflect a reliable application of such principles to the facts. | 4 |
| | | | a. Dr. Shoemake's apportionment analysis double-counts the supposed contribution of the '437 patent. | 5 |
| | | | b. Dr. Shoemake's "weight" and "apportionment" values are strictly subjective, not derived from any reliable methodology. | 6 |
| | | | c. Dr. Shoemake improperly includes unpatented features in his apportionment. | 9 |
| | | | d. Dr. Shoemake improperly fails to apportion the invention of the '437 patent apart from conventional technology. | 12 |
| | B. | Mr. Andrien's Opinions That Rely On Dr. Shoemake's Improper "Technical Apportionment" Should Be Excluded | | 13 |
| IV. | CONCLUSION | | | 16 |

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Daubert. City of Rockford v. Mallinckrodt ARD, Inc.*,
No. 3:17-CV-50107, 2024 WL 1363544 (N.D. Ill. Mar. 29, 2024) ....................8

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)....................1

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018)....................12, 13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) ....................*passim*

*Finjan, Inc. v. Sophos, Inc.*,
No. 14-cv-01197-WHO, 2016 WL 4702651 (N.D. Cal. Sept. 8, 2016)....................6

*Puff Corp. v. SHO Prods., LLC*,
No. 2:22-cv-02008-GW-(KSx), 2024 U.S. Dist. LEXIS 60746 (C.D. Cal. Apr. 2, 2024) ....................12

*United States v. Ruvalcaba-Garcia*,
923 F.3d 1183 (9th Cir. 2019) ....................1, 2

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)....................2, 9, 13, 15

**Other Authorities**

Federal Rule of Evidence 702....................*passim*

## I. INTRODUCTION

Defendants Absolute Software, Inc. and Mobile Sonic, Inc. (formerly known as NetMotion Wireless, Inc.) (collectively, "Defendants"), move this Court pursuant to Federal Rule of Evidence 702 to exclude the patent "apportionment" opinions that appear in the opening reports of Plaintiffs Sectra Communications AB and Columbitech, Inc.'s (collectively, "Plaintiffs") technical expert, Matthew B. Shoemake, Ph.D., and damages expert, Jeffrey S. Andrien. This motion seeks to exclude all apportionment opinions in the Shoemake and Andrien Reports and any testimony based on the excluded portions of the reports. Specifically, Dr. Shoemake, who is not an economist or damages expert, provides an improper economic analysis of customer demand, which he disguises as a "technical apportionment" analysis. Mr. Andrien then adopts and relies upon Dr. Shoemake's unsupported and flawed opinions without performing his own apportionment analysis. These unreliable opinions should be excluded.

## II. LEGAL STANDARD

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) ("Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702."). The expert's testimony must have a reliable basis in the knowledge and experience of

the relevant discipline. *Ruvalcaba-Garcia*, 923 F.3d at 1188-89. "The district court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and properly can be applied to the facts in issue, with the goal of ensuring that the expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 1189 (internal citations and quotations omitted).

## III. ARGUMENT

In cases such as this, where "the accused technology does not make up the whole of the accused product, apportionment is required." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) ("The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product."). Plaintiffs offer expert testimony from two experts—Dr. Shoemake and Dr. Andrien—supposedly directed to this mandatory apportionment. But expert testimony as to apportionment—like all expert opinions—must conform to the requirements of Rule 702. Neither of Plaintiffs' "apportionment" expert opinions does. There is no reliable basis for any of the expert opinions on apportionment proffered by Plaintiffs, and they should all be excluded.

### A. Dr. Shoemake's Improper "Technical Apportionment" Should Be Excluded

The entirety of Dr. Shoemake's "technical apportionment" opinion (described in Section XV of his report) should be excluded, because these opinions are improper under **every** prong of the Rule 702 analysis—and failure to meet just one prong is a basis to exclude.

#### 1. Dr. Shoemake does not provide a technical assessment in his apportionment analysis and is not qualified to opine on economic assessments of product features.

Under Rule 702(a), Dr. Shoemake may opine on a topic if Sectra shows it is more likely than not that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Dr. Shoemake has a background in electrical engineering and computer science and has "expertise in communication systems and

standards" (Ex. 1, Shoemake Report at ¶¶ 23, 31). Rather than use his *technical* expertise to provide a *technical* analysis of the accused products, he engages in an improper *economic* valuation (explained below) that he is not qualified to perform. He has no expertise in economics or customer demand for VPN products and his technical expertise is entirely irrelevant here. Under Rule 702(a), the economic assessments by Dr. Shoemake should be excluded.

**2. Dr. Shoemake's opinions are not based on sufficient facts or data but are instead derived without justification from two different marketing (not technical) descriptions.**

Under Rule 702(b), an expert's proffered opinions must be "based on sufficient facts or data." Dr. Shoemake's opinions here are not. Dr. Shoemake's list of features of the accused product derives solely from two of NetMotion's **marketing** documents, portions of which are shown below and which contain different lists of features of the accused products. *See* Ex. 1, Shoemake Report at ¶¶ 307, 318.

[redacted]

[redacted]

The features in these lists are vague, and it is not apparent what technical scope is encompassed by each, likely because these are marketing documents, not technical breakdowns. Yet, without conducting a separate technical analysis, Dr. Shoemake adopts the marketing summaries of product features. Dr. Shoemake does not even compare the marketing features against the functionality of the accused products to ensure the list is a complete list of the technical features of the accused products or to ensure the marketing features do not overlap with one another—as explained below, some of them do overlap and are double counted. Furthermore, Dr. Shoemake's analysis (as explained below) involves subjectively assigning customer importance values to the list of adopted marketing phrases based on how he feels about them. Dr. Shoemake does this with **zero** factual support, such as documents and customer surveys. Clearly this does not fall under his expertise as a technical witness. Under this prong, too, Dr. Shoemake's analysis should be excluded.

**3. Dr. Shoemake's opinions are not the product of reliable principles and methods and do not reflect a reliable application of such principles to the facts.**

Under Rule 702(c) and (d), an expert's opinions must be "the product of reliable principles and methods" and must also "reflect[] a reliable application of the principles and methods to the facts of the case." Dr. Shoemake's opinions fail both requirements. His methodology and its application to the facts are not reliable, for at least four reasons: (1) he relies on marketing descriptions without conducting an independent technical analysis and consequently double counts


COOLEY LLP
3175 HANOVER STREET
PALO ALTO, CA 94304
(650) 843-5000

overlapping features of the accused products, (2) he randomly and without explanation of methodology assigns subjective values to the accused product features without any facts or data, (3) he improperly attributes unpatented product features to the claimed invention, and (4) attributes these features to the asserted patent without apportioning out conventional components already in the prior art. Each of these failures on its own would be sufficient to exclude Dr. Shoemake's apportionment analysis.

**a. Dr. Shoemake's apportionment analysis double-counts the supposed contribution of the '437 patent.**

As previously explained, Dr. Shoemake adopts (without justification) two different lists of marketing features of the accused products for each of his two "technical apportionment" methods. In addition to the problems with this methodology discussed above, Dr. Shoemake's uncritical adoption of these marketing materials as the basis for his "technical" apportionment analysis is made even less reliable because it leads him to double-count the contributions of the '437 patent.

Specifically, Dr. Shoemake admits that the marketing features overlap, such that Dr. Shoemake double (or more) counts features of the accused product. This over-values Dr. Shoemake's apportionment of the contribution of the '437 patent to the value of the accused product by **at least two-fold**. Specifically, Dr. Shoemake opines (with no technical analysis and no methodology set out) that the [redacted] Ex. 1, Shoemake Report at ¶¶ 307-310. First, there is no methodology given for his assessment of "importance". Second, there is considerable overlap between what Dr. Shoemake assessed as the functionality associated with the two "most important features." *See*, *e.g.*, Ex. 2, Shoemake June 18, 2024 Depo. Tr. at 150:19-151:3 [redacted] 151:5-12 [redacted]

[redacted] Because of the overlap between these two "features," Dr. Shoemake attributes the **same** characteristic of the '437 patent ([redacted] to **both**. *Id.* So, when Dr. Shoemake separately "weights" these features against the '437 patent and adds them together, he is admittedly double-counting the same characteristic of the '437 patent. This double-counting then leads to his opinions that "[redacted] Ex. 1, Shoemake Report at ¶ 313) and "[redacted] (*id.* at ¶ 317). This is improper. *Cf. Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 4702651 (N.D. Cal. Sept. 8, 2016) (explaining that "count[ing] the value of [the accused products'] features multiple times …. functioned to inflate [the expert's] … damages calculation" and excluding the expert's testimony a second time after determining that the expert's amended methodology did not fix the problem).

**b. Dr. Shoemake's "weight" and "apportionment" values are strictly subjective, not derived from any reliable methodology.**

Dr. Shoemake continues his flawed and unsupported analysis by performing an ad hoc, subjective valuation assessment—again, divorced from any supporting facts, technical assessment, accepted methodology, or expertise to conduct such analysis. For the product-feature breakdown as articulated by one NetMotion marketing document, Dr. Shoemake seemingly randomly or completely subjectively assigns each of the marketing-material-derived features of the accused product a subjective value of customer importance between zero to ten—the features' assigned "weight." *See* Ex. 1, Shoemake Report at ¶¶ 312, 316. Notably, he does not refer to any documents or customer surveys when assigning these values. He then adjusts the values according to his inflated apportionment to the '437 patent (*e.g.*, 50% or 100%) to arrive at the assigned "weight to the '437 patent." This is shown in the table below. *See also* Ex. 1, Shoemake Report at ¶ 312.

[redacted]

To determine what percentage of the features' combined value is attributed to the claimed invention, Dr. Shoemake adds the "weight" of all features (25), adds the "weight to the '437 patent" for all features (22.5), and then divides the latter by the former (22.5/25) to arrive at the subjective opinion that "the 'Core' features of the Accused Product derive **90%** (22.5/25) of their value from the claimed invention of the '437 Patent." *Id.* at ¶ 313 (emphasis added); *see also id.* at ¶ 317. These steps do not involve reliable methodology or economic analysis, and instead involve Dr. Shoemake subjectively assigning some numbers to phrases in a marketing document based on how he feels about them—he has no data or evidence to support his weighting and apportionment values other than his own say-so to arrive at a whopping 90% apportionment. That is not proper testimony for a technical expert.

Dr. Shoemake then changes his approach to a different subjective and equally problematic analysis using percentages that sum to 100 (*id.* at ¶ 321) and a different set of features derived from a second marketing document (*id.* at ¶ 318)—and again without having completed his own technical assessment, and instead performing an economic analysis by subjectively assigning customer "importance" percentages, again without showing his work.

[redacted]

These percentages again represent nothing more than Dr. Shoemake's subjective beliefs about how important the features described in a marketing document are to Absolute's customers, with no factual support or economic analysis or expertise. Simply put, he does not "show [his] work" as is required under Rule 702 and *Daubert*. *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 3:17-CV-50107, 2024 WL 1363544, at *10 (N.D. Ill. Mar. 29, 2024) ("Experts must show their work if their opinions are to be credited.").

**c. Dr. Shoemake improperly includes unpatented features in his apportionment.**

Dr. Shoemake additionally uses his flawed methodology to improperly include admittedly unpatented product features in his valuation of the apportionment to the ’437 patent, in direct contravention of Federal Circuit authority.

When an accused product includes both accused and unaccused features, “[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product.” *VirnetX*, 767 F.3d at 1329; *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018) (“When the accused technology does not make up the whole of the accused product, apportionment is required.”).

Here, Dr. Shoemake never shows that the entire value of the accused product is attributable to the ’437 patent, so any patent damages owed to Plaintiffs **must** be apportioned to **only** the contribution of the patented features excluding any unpatented features. *See id.* Dr. Shoemake does not properly apportion here. For example, Dr. Shoemake [redacted] Ex. 1, Shoemake Report at ¶ [redacted] 316.

But the ’437 patent does not claim “[redacted] as Dr. Shoemake admitted in deposition: [redacted].” Ex. 2, Shoemake June 18, 2024 Depo. Tr. at 159:23-24; *see also* ’437 patent. Dr. Shoemake commits the same error with respect to other accused features. For example, in Dr. Shoemake’s second analysis, he claims that [redacted]


COOLEY LLP
3175 HANOVER STREET
PALO ALTO, CA 94304
(650) 843-5000

[redacted]" that Dr. Shoemake fully attributes to the '437 patent is [redacted] even though the '437 patent never discusses or claims login and it cannot, therefore, be a feature that is attributable to the '437 patent. Ex. 1, Shoemake Report at ¶ 321.

[redacted]

Another example is the [redacted]—neither of which are covered by the '437 patent claims but both of which inexplicably factor into Dr. Shoemake's first

apportionment analysis in paragraph 316. *Compare* '437 Patent *to* Ex. 1, Shoemake Report at ¶ 316. This is improper, *see Finjan*, 879 F.3d at 1310, and is yet another way that Dr. Shoemake's apportionment improperly inflates the value of the '437 patent. [redacted] *Compare* Ex. 1, Shoemake Report at ¶ 316 *to* ¶ 321. In any event, Dr. Shoemake has no reliable justification for what features he includes in his apportionment analysis, and it should be excluded under Rule 702. *Puff Corp. v. SHO Prods., LLC*, No. 2:22-cv-02008-GW-(KSx), 2024 U.S. Dist. LEXIS 60746 at *17-19 (C.D. Cal. Apr. 2, 2024) (granting defendants' motion to exclude expert's apportionment opinions because expert's report "fail[ed] to include a clear apportionment of the unclaimed features").

**d. Dr. Shoemake improperly fails to apportion the invention of the '437 patent apart from conventional technology.**

Finally, Dr. Shoemake attributes the accused product features to the asserted patent without apportioning the inventive concept of the '437 patent over conventional components already in the prior art. This too is directly contrary to Federal Circuit authority: "[T]he patent owner must apportion or separate the damages between the patented improvement and the conventional components…. This ensures that [Plaintiff] is compensated for the patented improvement … rather than the entire mower." *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

For example, Dr. Shoemake concludes [redacted]. *Compare* Ex. 1, Shoemake Report at ¶¶ 312, 316 and Ex. 2, Shoemake June 18, 2024 Depo. Tr. at 148:5-7 [redacted]



COOLEY LLP
3175 HANOVER STREET
PALO ALTO, CA 94304
(650) 843-5000

[redacted] *with* Shoemake June 18, 2024 Depo. at 85:10-15 ([redacted]); *id.* at 132:2-8 ([redacted]; ABSOLUTE_0202863 at -885 ([redacted] *id.* at -920 ([redacted]). His report does not include any analysis with respect to any incremental value of the '437 patent over other prior art forms of providing a high-performance VPN. Similarly, Dr. Shoemake opines that [redacted] Ex. 1, Shoemake Report at ¶¶ 312, 316. This is improper. *See Exmark*, 879 F.3d at 1348. Dr. Shoemake's apportionment opinions, which are based on inflated apportionment values, should be excluded based on his failure to apportion to only the patented improvement.

* * *

Dr. Shoemake's "technical apportionment" opinions are far out of the realm of what is allowed under Rule 702 and Federal Circuit precedent for each of the above reasons, any one of which would be sufficient to exclude his apportionment opinions. Taken together, this Court should exclude Dr. Shoemake's erroneous and unreliable apportionment opinions (Section XV of the Ex. 1, Shoemake Report). *See VirnetX*, 767 F.3d at 1328 (District courts should exercise their gatekeeping authority to "ensure that only theories comporting with settled principles of apportionment [are] allowed to reach the jury.").

**B. Mr. Andrien's Opinions That Rely On Dr. Shoemake's Improper "Technical Apportionment" Should Be Excluded**

Surprisingly, Plaintiffs' damages expert Mr. Andrien does not perform any of his own apportionment analysis but instead relies solely on Dr. Shoemake's improper and unreliable

"technical apportionment" opinions. As a result, Mr. Andrien's opinions are likewise improper, unreliable, and contrary to binding Federal Circuit authority.

Mr. Andrien admits that he relies entirely on Dr. Shoemake's opinions for his apportionment analysis. *See* Ex. 5, Andrien Report at ¶ 109 ("To properly apportion the estimated accused revenues, I rely on Dr. Shoemake's evaluation of the technological importance of infringing features in accused instrumentalities…"); *see also id.* ¶¶ 109-111 (summarizing Dr. Shoemake's analysis and explaining how it was used in Mr. Andrien's analysis); *see also* Ex. 4, Andrien June 20, 2024 Depo. Tr. at 125:23-25 ("A. I – I use the info- -- I have apportionment based on the – the information given to me by Dr. Shoemake."). As Mr. Andrien explained in deposition:

Q: [redacted]

[redacted]

(Ex. 4, Andrien June 20, 2024 Depo. Tr. at 124:21-25, 126:1-13.) In other words, Mr. Andrien performed his own analysis to determine the quantity of accused sales, but then relies entirely on Dr. Shoemake to apportion those sales.

As described above, Dr. Shoemake is not qualified to provide these opinions as to apportionment—his opinions are not based on sufficient facts and data; his opinions are not the product of reliable methodology; and his opinions are not the result of proper application of the methodology to the facts in this case. Mr. Andrien acknowledges some of the limitations in Dr. Shoemake's analysis but relies on the Shoemake analysis, nonetheless, and does nothing to fill in missing holes. *See*:

Q: [redacted]

[redacted]

(*Id.* at 126:14-127:7)

Because Dr. Shoemake's apportionment analysis is fundamentally flawed, does not comply with Rule 702, and does not abide by Federal Circuit precedent, by adopting Dr. Shoemake's apportionment analysis, Mr. Andrien's opinions are infected by all the same problems. As a result, Mr. Andrien's damages conclusion that [redacted] fails to properly apportion the actual contribution of the invention of the '437 patent and should be excluded. *See Finjan*, 879 F.3d at 1309; *VirnetX*, 767 F.3d at 1329; Ex. 5, Andrien Report at ¶ 114.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exclude the apportionment opinions in the Shoemake and Andrien Reports and all testimony based on the excluded portions of the reports.

I certify that this memorandum contains 3,793 words, in compliance with the Local Civil Rules.

DATED July 12, 2024

Respectfully submitted,

COOLEY LLP

*<u>/s/ Heidi L. Keefe</u>*
Heidi L. Keefe (*pro hac vice*)
COOLEY LLP
3175 Hanover St.
Palo Alto, CA 94304-1130
Tel.: (650) 843-5000
Fax: (650) 849-7400
Email: hkeefe@cooley.com

Christopher B. Durbin (WSBA No. 41159)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101-1355
Tel.: (206) 452-8796
Fax: (206) 452-8800
Email: cdurbin@cooley.com

Reuben H. Chen (*pro hac vice*)
Alexandra Leeper (*pro hac vice*)
COOLEY LLP
3175 Hanover St.
Palo Alto, CA 94304-1130
Tel.: (650) 843-5000
Fax: (650) 849-7400
Email: hkeefe@cooley.com
Email: rchen@cooley.com
Email: aleeper@cooley.com

Orion Armon (*pro hac vice*)
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202-2686
Tel.: (720) 566-4000
Fax: (720) 566-4099
Email: oarmon@cooley.com

*Attorneys for Defendants*
*ABSOLUTE SOFTWARE, INC. and MOBILE SONIC, INC.*