THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SECTRA COMMUNICATIONS AB and COLUMBITECH, INC.,

Plaintiffs,

v.

ABSOLUTE SOFTWARE, INC. and MOBILE SONIC, INC.,

Defendants.

Case No. 2:22-cv-00353-RSM

**DEFENDANTS' MOTION TO PARTIALLY EXCLUDE THE REPORT AND TESTIMONY OF PLAINTIFFS' TECHNICAL EXPERT MATTHEW B. SHOEMAKE**

**NOTE ON MOTION CALENDAR:**
AUGUST 30, 2024

Complaint Filed: July 23, 2021
Trial Date: December 2, 2024



COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

## TABLE OF CONTENTS


Page

**I. INTRODUCTION ..... 1**

**II. LEGAL STANDARD ..... 1**

**III. ARGUMENT ..... 2**

A. Dr. Shoemake's Opinions As To State Of Mind Are Improper And Should Be Excluded ..... 2

B. Dr. Shoemake Should Be Precluded From Parroting Information, Restating Facts, And Providing *Ipse Dixit* Without Any Independent Technical Analysis ..... 4

C. All Opinions In Which Dr. Shoemake Applied Improper Claim Constructions Should Be Excluded ..... 7

1. "traffic…are directed by traffic" ..... 7

2. "second unit" ..... 10

**IV. CONCLUSION ..... 13**




COOLEY LLP
10265 SCIENCE CENTER DRIVE
SAN DIEGO, CA 92121-1117
+1 858 550 6000

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Chef Am. v. Lamb-Weston*, 358 F.3d 1371 (Fed. Cir. 2004)....9

*Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347 (Fed. Cir. 2011)....2, 7, 10, 12

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)....1, 6

*Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-cv-05845-VC, 2016 WL 1029463 (N.D. Cal. Mar. 15, 2016)....5

*Elliott v. Google, Inc.*, 860 F.3d 1151 (9th Cir. 2017)....6

*Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*, No. 1:19-CV-260, 2021 WL 4820738 (M.D.N.C. Oct. 15, 2021)....3

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)....6

*Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803 (9th Cir. 2019)....6

*Kaneka Corp. v. Zhejiang Med. Co.*, No. CV 11-02389 SJO, 2017 WL 10591760 (C.D. Cal. Feb. 22, 2017)....3

*LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033, 2016 WL 5112062 (N.D. Ill. Sept. 20, 2016)....3, 5

*MLC Intell. Prop. v. Micron Tech., Inc.*, 10 F.4th 1358 (Fed. Cir. 2021)....6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008)....9, 12

*PacTool Int'l, Ltd. v. Kett Tool Co.*, No. C06-5367 BHS, 2012 WL 3637391 (W.D. Wash. Aug. 22, 2012)....6

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*Pelican Int'l, Inc. v. Hobie Cat Co.*,
655 F. Supp. 3d 1002 (S.D. Cal. 2023)....................2, 3, 4, 5

*RSI Corp. v. Int'l Bus. Machs. Corp.*,
No. C-08-03414 RMW, 2013 WL 1087468 (N.D. Cal. Mar. 13, 2013) ....................5

*Sonos, Inc. v. D & M Holdings Inc.*,
297 F. Supp. 3d 501 (D. Del. 2017)....................4

*Treehouse Avatar LLC v. Valve Corp.*,
54 F.4th 709 (Fed. Cir. 2022) ....................2, 7, 10, 12

*United States v. Ruvalcaba-Garcia*,
923 F.3d 1183 (9th Cir. 2019) ....................1, 2

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
No. 1:17-cv-00770-JDW-MPT, 2024 WL 166833 (D. Del. Jan. 16, 2024)....................3, 5

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
259 F.3d 1101 (9th Cir. 2001) ....................6

**Court Rules**

Fed. R. Civ. P.
26....................6
26(a)(2)(B) ....................6
37(c)(1) ....................6

Fed. R. Evid.
702....................1, 3
703....................3


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

## I. INTRODUCTION

Defendants move under Federal Rule of Evidence 702 to exclude certain opinions of Plaintiffs' technical expert, Matthew B. Shoemake, Ph.D., made in his opening expert report on infringement dated December 22, 2023 (the "Shoemake Report") and any testimony based on them. *First*, this motion seeks to exclude Dr. Shoemake's improper opinions as to Defendants' state of mind. *Second*, all opinions by Dr. Shoemake that merely recite facts or parrot others' opinions should be excluded. *Third*, Dr. Shoemake misapplied the Court's claim construction of "traffic…directed by traffic" and ignored the plain and ordinary meaning of the term "second unit"; all opinions based on Dr. Shoemake's incorrect claim constructions should be struck.[1]

## II. LEGAL STANDARD

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) ("Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702."). "The district court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and properly can be applied to the facts in issue, with the goal

[1] Defendants have filed a separate motion to exclude Dr. Shoemake's damages-related apportionment opinions.


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

of ensuring that the expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Ruvalcaba-Garcia*, 923 F.3d at 1189 (internal citations and quotations omitted).

The Court may exclude expert testimony that is based on an incorrect claim construction. *See Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 715 (Fed. Cir. 2022) ("[T]he grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court."); *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011) (expert testimony "based on an incorrect understanding of the claim construction" must be disregarded).

## III. ARGUMENT

### A. Dr. Shoemake's Opinions As To State Of Mind Are Improper And Should Be Excluded

It is improper for an expert to opine about subjective intent, motive, or state of mind. *See Pelican Int'l, Inc. v. Hobie Cat Co.*, 655 F. Supp. 3d 1002, 1029-30 (S.D. Cal. 2023). Dr. Shoemake's report, however, contains numerous "opinions" as to the ultimate question of Defendants' state of mind, including about alleged knowledge of the asserted '437 patent and of infringement. These opinions are based not on any technical expertise nor any firsthand knowledge but are instead nontechnical conclusions Dr. Shoemake draws from reviewing circumstantial evidence in the case, such as emails and deposition transcripts. As such, they do not warrant the imprimatur of expertise that comes from an expert witness where no relevant expertise exists. As an example of Dr. Shoemake's overreaching opinions, Dr. Shoemake states "in my opinion, this evidence shows that NetMotion's own CTO knew that [redacted] …was indeed causing infringement." Ex. 1 (Shoemake Rep.) ¶ 219. All such opinions as to state of mind are improper and should be excluded. *See, e.g.*, Ex. 1 at ¶¶ 184-186, 188-190, 192-195, 200, 202, 204, 206, 208, 210-211, 215-216, 218-221, 258-259, 288, 305.

Dr. Shoemake is not qualified to provide "expert" opinions as to state of mind. Dr. Shoemake has a background in electrical engineering and computer science (Ex. 1 ¶ 23), and has "expertise in communication systems and standards" (*id.* ¶ 31). He is neither a fact witness nor a psychologist. Ex. 2 (Shoemake June 18, 2024 Dep. Tr.), at 31:5-8, 133:2-8. He has "no knowledge about [Defendants'] subjective state of mind" (*Wirtgen Am., Inc. v. Caterpillar, Inc.*, No. 1:17-cv-00770-JDW-MPT, 2024 WL 166833, at *2 (D. Del. Jan. 16, 2024)) and "is not qualified to provide 'expert' opinions on the issues of Defendants' mental states" (*Kaneka Corp. v. Zhejiang Med. Co.*, No. CV 11-02389 SJO (SSx), 2017 WL 10591760, at *14 (C.D. Cal. Feb. 22, 2017)). Thus, Dr. Shoemake "is at best offering a gratuitous opinion, and at worst [would be] exerting undue influence on the jury." *LoggerHead Tools, LLC v. Sears Holdings Corp.*, No. 12-cv-9033, 2016 WL 5112062, at *2 (N.D. Ill. Sept. 20, 2016).

Courts often find such "expert testimony concerning state of mind, intent, or purpose is unreliable because it is not grounded in analytically sound principles or methods." *Fuma Int'l LLC v. R.J. Reynolds Vapor Co.*, No. 1:19-CV-260, 2021 WL 4820738, at *3 (M.D.N.C. Oct. 15, 2021). To the extent that Dr. Shoemake "intends to point to objective facts … as evidence of [] state of mind, that's nothing more than lawyer argument. It's not expert analysis. Rules 702 and 703 do not permit parties to cloak attorney argument in the guise of expert testimony." *Wirtgen Am.*, 2024 WL 166833 at *2.

Assessing state of mind is reserved exclusively for the jury, who can understand the evidence and determine state of mind without expert testimony. *Pelican*, 655 F. Supp. 3d at 1029; *see also Kaneka Corp.*, 2017 WL 10591760 at *14 (precluding expert from testifying about motives, intent, or state of mind, because such "opinions" would invade the province of the jury); *see also Fuma*, 2021 WL 4820738 at *3 ("[I]ntent is a question for the trier of fact that does not require expert testimony."); *LoggerHead Tools*, 2016 WL 5112062 at *2 ("There is no reason why the finder of fact could not evaluate any evidence and decide whether Defendants' conduct was willful…"). Thus, expert testimony on Defendants' state of mind is inadmissible. *Pelican*, 655 F.


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

Supp. 3d at 1029 ("Expert testimony as to intent, motive, or state of mind offers no more than the drawing of an inference from the facts of the case … and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury."); *see also Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017) ("When a factual issue is 'equally within the competence of the jurors to understand and decide,' expert testimony is not helpful to the jury and, therefore, not admissible.").

The portions of the Shoemake Report containing opinions about intent, motive, or state of mind, and any related testimony, must be excluded. This includes at least paragraphs 184-186, 188-190, 192-195, 200, 202, 204, 206, 208, 210-211, 215-216, 218-221, 258-259, 288, 305.

### B. Dr. Shoemake Should Be Precluded From Parroting Information, Restating Facts, And Providing *Ipse Dixit* Without Any Independent Technical Analysis

In addition to improperly opining about state of mind, Dr. Shoemake repeatedly parrots information gleaned from documents and other witnesses, about which he has no first-hand knowledge, and instead provides *ipse dixit* testimony about what various documents and witnesses have said without any reliable, independent technical analysis. These statements should also be excluded.

As in the excluded report in *Pelican*, Dr. Shoemake "engages in unnecessarily long summaries of the facts in evidence when rendering his opinions … For much of these summaries, [Dr. Shoemake] simply parrots the evidence in the record and does not actually offer any technical opinions." *Pelican,* 655 F. Supp. 3d at 1030. For example, in Section X of his report, Dr. Shoemake tells an extensive and biased story about the "history of Columbitech and NetMotion" in which he selectively restates[2] information "made available to [him] in Sectra's First Amended Complaint" (¶ 183) and from documents and emails (¶¶ 183, 185) without analysis. Dr. Shoemake also includes a similar regurgitation of the record in Sections XI (titled, "NetMotion's Pre-Suit Knowledge of the '437 Patent) and XII (titled, "NetMotion's Statements Regarding Columbitech

[2] At times, Dr. Shoemake molds the facts to fit his improper theories and opinions as to motive, intent, and state of mind. This is addressed in Section III.A. of this motion.


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

and Columbitech Mobile VPN"). *See, e.g.*, Shoemake Rep. ¶¶ 223 ([redacted]). "Courts have explained that such unhelpful restatements of the facts as the expert sees them are inadmissible." *Pelican,* 655 F. Supp. 3d at 1030 (internal quotations omitted) (collecting cases).

Dr. Shoemake's regurgitation of the facts does not use his expertise to contribute to the jury's understanding. *Cf. LoggerHead Tools*, 2016 WL 5112062 at *2; *cf. Wirtgen Am.*, 2024 WL 166833 at *2. Instead, it improperly lends the weight and credibility of an expert to what is unquestionably not expert testimony. As courts routinely find, "it is improper for [Dr. Shoemake] to engage in these long non-technical restatements of the facts," and all such statements should be excluded. *Pelican,* 655 F. Supp. 3d at 1030; *see also Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-cv-05845-VC, 2016 WL 1029463, at *1 (N.D. Cal. Mar. 15, 2016) (excluding testimony where expert "does no more than regurgitate information given to him by other sources"); *see also RSI Corp. v. Int'l Bus. Machs. Corp.*, No. C-08-03414 RMW, 2013 WL 1087468, at *4 (N.D. Cal. Mar. 13, 2013) (striking expert declaration because "his declaration is mostly legal opinion and an unhelpful restatement of the facts as he sees them").

Dr. Shoemake's "factual" recitation often includes comments in footnotes in which he asserts, without analysis, that "[t]hese statements [by Defendant(s)] appear to be not true" (*e.g.*, Shoemake Rep. at 96 n.32). Dr. Shoemake's unsupported assertions are almost invariably followed by a cite to "Interview with Tobias Englund, date December 20, 2023." Once more, Dr. Shoemake is just parroting another source—this time, information from Columbitech's CEO Tobias Englund. Nothing supports Dr. Shoemake's apparent "conclusions" that various statements are untrue other than this solitary conversation with Mr. Englund in which Mr. Englund **told him** the statements are untrue—Dr. Shoemake provides no evidence, no proof, and no independent technical analysis to support his assertions of falsity. It is just the self-serving say-so of Mr. Englund, repeated by Dr. Shoemake. At deposition, Dr. Shoemake was not even aware of what

causes of action these assertions implicate, let alone the legal standard applicable to any assertion of falsity. *See* Shoemake June 18, 2024 Dep. Tr. at 39:18-40:4, 44:10-47:17. All instances of this *ipse dixit* should be excluded. *PacTool Int'l, Ltd. v. Kett Tool Co.*, No. C06-5367 BHS, 2012 WL 3637391, at *4 (W.D. Wash. Aug. 22, 2012) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))).

If Plaintiffs argue Dr. Shoemake conducted an independent technical analysis to arrive at his conclusions, he has not disclosed this analysis in his report and cannot do so now. Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert's report to contain a "complete statement of all opinions the witness will express and the basis and reasons for them," including the "facts or data considered by the witness in forming them." "When a party fails to disclose information required by Rule 26, Rule 37(c)(1) provides that the improperly withheld information should be excluded, unless the failure to disclose is 'substantially justified or is harmless.'" *Ingenco Holdings, LLC v. Ace Am. Ins. Co.*, 921 F.3d 803, 821 (9th Cir. 2019) (quoting Fed. R. Civ. P. 37(c)(1)); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (courts forbid the use at trial of any information that was required to be, but was not properly disclosed under Rule 26(a)(2)(B)). "The Ninth Circuit affords district courts 'particularly wide latitude' in applying Rule 37(c)(1) to exclude information that a party failed to provide under Rule 26." *See MLC Intell. Prop. v. Micron Tech., Inc.*, 10 F.4th 1358, 1370 (Fed. Cir. 2021); *see also Elliott v. Google, Inc.*, 860 F.3d 1151, 1161 (9th Cir. 2017) (affirming exclusion of evidence not disclosed during discovery). Here, there is no evidence that Dr. Shoemake's failure to disclose was substantially justified or harmless, and he should be prohibited from bringing in any belated and/or withheld analysis.


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

In short, any statements—including parroting, restatement of facts as he sees them, and *ipse dixit* recitations—made by Dr. Shoemake without any independent technical analysis disclosed in support of those statements should be excluded. This includes at least Sections X, XI, and XII of Dr. Shoemake's Opening Report.

### C. All Opinions In Which Dr. Shoemake Applied Improper Claim Constructions Should Be Excluded

Finally, Dr. Shoemake's opinions on the claimed "second unit" and "traffic…are directed by traffic" limitations must be excluded for reliance on incorrect claim constructions. *See Treehouse Avatar*, 54 F.4th at 715 ("[T]he grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court."); *Cordis*, 658 F.3d at 1357 (expert testimony "based on an incorrect understanding of the claim construction" must be disregarded). Dr. Shoemake's deposition made clear that (1) he applied a construction of "traffic…are directed by traffic" that is inconsistent with the Court's order on claim construction and (2) he interpreted "second unit" in a manner inconsistent with the plain language of the claims and at odds with how he interpreted the similarly situated "first unit." Ex. 2 at 89:7-14, 108:22-24, 111:5-112:4. Thus, his opinions as to both claim limitations should be excluded.

#### 1. "traffic…are directed by traffic"

Dr. Shoemake's construction of the "traffic" limitation 1[g] is flawed because it is inconsistent with the Court's order. The Court paraphrased the plain and ordinary meaning of the limitation as encompassing how "the path taken by traffic between sockets directs subsequent traffic." (Dkt. 194 at 10; Ex. 1 at 201 n.54.) Dr. Shoemake disregarded this meaning, and his opinions on the "traffic" limitation should be excluded, as also discussed in Defendants' summary judgment motion.

The Court's claim construction order used an automobile metaphor to explain the plain meaning of the "traffic" limitation:


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

> To use an automobile metaphor: when you are driving around trying to find a popular concert venue, you might follow the traffic ahead of you to see where everyone is going, and that traffic "directs" where you go. You and the cars behind you are traffic, the cars in front of you are traffic too. **The traffic that successfully found the concert venue, in a sense, directs the subsequent traffic**, even though of course the cars are driven by steering wheels, connected to hands, connected to brains. That the traffic in this patent is generated and transmitted from source to destination by hardware and software does not render the concept of traffic directing traffic indefinite.

(Dkt. 194 at 10 (emphasis added).) The Court's metaphor makes clear that the plain and ordinary meaning of this limitation is that subsequent traffic is directed to its destination by following other traffic that already found the end destination (i.e., the concert venue). This is the understanding Plaintiff advocated at claim construction. Specifically, Plaintiffs argued that "a POSITA would have understood that the initial traffic (which includes the destination address) directs the subsequent traffic by establishing the route of the subsequent traffic)." (Plaintiffs' Responsive Claim Construction Brief (Dkt. 172) at 13-14; *see also* Plaintiffs' Opening Claim Construction Brief (Dkt. 163) at 18 ("the initial traffic between a first socket in the first software component and the corresponding second socket in the second software component, establishes the route between the first socket and the second socket that the subsequent traffic will take, thereby directing that subsequent traffic from the first socket to the corresponding second socket.").) The Court ultimately sided with Plaintiffs in its claim construction order.

Dr. Shoemake, however, has now abandoned the position Plaintiffs previously and successfully advanced at claim construction. At deposition, Dr. Shoemake admitted to applying a different construction of the "traffic" limitation. Instead of traffic being directed by following other traffic, Dr. Shoemake opined that the term "traffic" was now "traffic type":

> Q: I want to clarify I think two things I head in that. The first is, I believe in the middle you explained that directed by traffic means directed according to traffic type?
>
> A: I think that a person of ordinary skill in the art would look at this claim limitation as a whole. They would not decimate it to traffic directed by traffic because that loses –


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

> they would realize that loses the meaning of the claim limitation. **They would realize that the claim limitation starts off by talking about traffic or data, data traffic, coming from different sockets. And then when it talks about directing those and it says by traffic, it's talking about according to the traffic type.** It just said in the same limitation that there are different first sockets. These different first sockets such as e-mail, text messaging, web traffic are where the traffic, the data emerges from and **it's saying just like assigning boys and girls to basketball teams, I'm going to direct them to their basketball teams by height.** It's not saying – it's not indicating by whom, **it's saying I'm going to look at the different traffic types and that's how the directing is going to occur**.

Ex. 2 at 111:5-112:4 (emphasis added). Dr. Shoemake further disclaimed the Court's explanation of the term, testifying that the claim limitation "is not saying by – as in, for example, by whom" the traffic is directed. (*Id.* at 108:22-24.) This application of the claim limitation is inconsistent with the Court's claim construction order because the Court was clear that claim limitation addresses who or what directs traffic—*i.e.*, "the path taken by traffic between sockets directs subsequent traffic." (Dkt. 194 at 10); Ex. 1 at 201 n.54.

Consequently, Dr. Shoemake misapplies the Court's construction in a manner that would effectively rewrite the claim to change/broaden its scope. *See Chef Am. v. Lamb-Weston*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[W]e construe the claim as written, not as the patentees wish they had written it."). There is a clear distinction between the Court's explanation of the term where the limitation encompasses directing traffic based on other traffic's destination, and Dr. Shoemake's broader construction where the limitation encompasses directing traffic "according to the traffic type." (*See* Dkt. 194 at 10; *accord* Ex. 2 Shoemake June 18, 2024 Dep. Tr. at 111:5-112:4.) Neither the claim language, the specification, Plaintiff's claim construction arguments, nor—most importantly—the Court's order say anything about "type" of traffic.[3] The Court's order was clear that the Court understood this claim term to be about <u>who</u> directs traffic, and Dr.

[3] To the extent this amounts to a dispute over claim scope between the parties, it falls to the Court to resolve that dispute as a matter of law. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008).

Shoemake was clear that he did not apply that understanding. (*See* Dkt. 194 at 10; Ex. 2 (Shoemake June 18, 2024 Dep. Tr.) at 108:22-24.) This is a material difference that warrants exclusion. *See Treehouse Avatar*, 54 F.4th at 715 ("[T]he grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court."); *Cordis*, 658 F.3d at 1357 (expert testimony "based on an incorrect understanding of the claim construction" must be disregarded).

**2. "second unit"**

As also addressed in the motion for summary judgment, Dr. Shoemake applied a construction of "second unit" that is inconsistent with the claim language, inconsistent with the specification, and even inconsistent with Dr. Shoemake's own application of "first unit." This term was not construed at claim construction so receives its plain and ordinary meaning. Because Dr. Shoemake failed to apply the term's plain and ordinary meaning in his infringement analysis, Dr. Shoemake's opinions as to the second unit should be excluded.

The plain language of claim limitation 1[Preamble B] requires three elements of the "second unit"—communications hardware, software components, and a protocol stack that sits between them. As shown in the table below, this limitation exactly parallels the requirements of the "first unit" set forth in limitation 1[C]:

| First Unit | Second Unit |
|---|---|
| **Claim 1[Preamble A]** wherein said first unit is comprised of a geographically mobile unit and includes a first protocol stack adapted to act between a first communications hardware used for communication via a first communications network **and one or more first software components**, and | **Claim 1[Preamble B]** wherein said second unit includes a second protocol stack adapted to act between a second communications hardware used for communication via a second communications network **and one or more second software components** |

('437 patent, Claim 1 (annotated and emphasis added)). Based on the language of Claim 1[Preamble A], Dr. Shoemake acknowledged that the first unit must include the first software components and opined that the first software components are "applications running on the first

unit" within the context of the surrounding claim language. (*See* Shoemake Rep. ¶ 521.) Because the same language is used to describe the requirements of the first and second unit, the second unit must also include the second software components.

Numerous passages from the '437 patent specification reinforce that the "second software components" are on the "second unit," with no disclosures of second software components located anywhere <u>other</u> than on the second unit. ('437 patent at Abstract ("[t]he first and second units include, respectively, first and second protocol stacks and first and second session layers, which interface between the first and second protocol stacks and **first and second software components acting within the first and second units, respectively.**") (emphasis added); *see also id.* at 8:10-12, 4:61-5:6, 9:36-52.) Figure 1 of the '437 patent further shows that the software components (labeled 25, annotated in yellow) are within the second unit (labeled 2, annotated in green):






COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

('437 patent at Fig. 1 (highlighting added); *see also id.* at 9:41-52, 11:40-45 (indicating that element 25 in Figure 1 (highlighted yellow) refers to the second software components).) Indeed, the specification distinguishes: (i) communicating devices/"units" that are endpoints of the network communications (*i.e.*, first and second units) and (ii) other, separate "intermediate units" that can facilitate such communications between the first and second unit endpoints. *See, e.g.*, *id.* at 11:66-12:15, 12:40-65, Figs. 3-5. The specification nowhere discloses or suggests that a single "unit" can span multiple, separate devices that respectively have distinct, separate communications hardware, protocol stacks, and software components. Dr. Shoemake even acknowledges when discussing the '437 patent that the '437 patent requires the second software components to be on the second unit. Ex. 1 ¶ 370 ("[t]here are also software components in the first and second units."); *see also* ¶ 371.

Despite elsewhere noting that the '437 patent requires the second unit to include the second software components, Dr. Shoemake failed to apply this construction in his infringement analysis.[4] Instead, Dr. Shoemake set aside the plain meaning of the claim language and took the new and unfounded position that the claim limitation "does not require the second software components to be housed within the second unit" in contradiction of his own understanding of "second unit." Ex. 2 at 89:7-14. Consequently, Dr. Shoemake's testimony regarding the "second unit" should be excluded because he applied a materially different construction of "second unit" that is inconsistent with the plain and ordinary meaning of the claim language. *See Treehouse Avatar*, 54 F.4th at 715 ("[T]he grant of a motion to strike expert testimony is not improper when such testimony is based on a claim construction that is materially different from the construction adopted by the parties and the court."); *Cordis*, 658 F.3d at 1357 (expert testimony "based on an incorrect understanding of the claim construction" must be disregarded).

[4] To the extent Dr. Shoemake's construction of "second unit" amounts to a dispute over claim scope between the parties, it falls to the Court to resolve that dispute as a matter of law. *See O2 Micro Int'l.*, 521 F.3d at 1361-62.

## IV. CONCLUSION

Defendants respectfully request that the Court exclude the described opinions in the Shoemake Report and all testimony based on the excluded portions of the report.


COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101
(206) 452-8700

I certify that this Memorandum contains 4,195 words, in compliance with the Local Civil Rules.

DATED July 12, 2024

Respectfully submitted,

COOLEY LLP

*/s/ Heidi L. Keefe*

Christopher B. Durbin (WSBA #41159)
COOLEY LLP
1700 Seventh Avenue
Suite 1900
Seattle, WA 98101-1355
Tel:(206) 452-8700
Fax:(206) 452-8800
Email: cdurbin@cooley.com

Heidi L. Keefe (*pro hac vice*)
Reuben H. Chen (*pro hac vice*)
Alexandra Leeper (*pro hac vice*)
3175 Hanover St.
Palo Alto, CA 94304-1130
Tel: (650) 843-5000
Fax: (650) 849-7400
Email: hkeefe@cooley.com
Email: rchen@cooley.com
Email: aleeper@cooley.com

*Attorneys for Defendants*
*ABSOLUTE SOFTWARE, INC. and MOBILE SONIC, INC.*