# EXHIBIT A

CONTAINS REFERENCES TO INFORMATION DESIGNATED AS CONFIDENTIAL UNDER THE PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECTRA COMMUNICATIONS AB,<br><br>Plaintiff,<br><br>v.<br><br>ABSOLUTE SOFTWARE, INC. and NETMOTION SOFTWARE, INC.,<br><br>Defendants. | Case No. 2:22-cv-0353-RSM |

**OPENING EXPERT REPORT ON INVALIDITY OF NATHANIEL POLISH, PHD**

Dated: December 21, 2023

Respectfully submitted,

[signature]

Nathaniel Polish, PhD

**viii. Element 1[g]: "causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets"**

145. As I discuss in Section VII below, it is my opinion that the Asserted Claims are indefinite, as a POSA would not understand with reasonable certainty the scope claim element 1[g]. In particular (and as explained in more detail below) a POSA would not understand with reasonable certainty how "traffic … are directed by traffic," as recited by this claim element, as opposed to traffic being directed by network hardware and software.

146. To the extent that this term is not found to be indefinite, however, the same features and functionalities that Plaintiff identifies in the later Accused NetMotion Instrumentalities for purposes of infringement are also present in the earlier Prior Art NetMotion Instrumentalities. Under Plaintiff's apparent understanding and interpretation of this term for purposes of infringement, the Prior Art NetMotion Instrumentalities thus anticipate "causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets."

**viii. Element 1[g]: "causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets"**

318. As I discuss in Section VII below, it is my opinion that the Asserted Claims are indefinite, as a POSA would not understand with reasonable certainty the scope claim element 1[g]. In particular (and as explained in more detail below) a POSA would not understand with reasonable certainty how "traffic … are directed by traffic," as recited by this claim element, as opposed to traffic being directed by network hardware and software.

319. To the extent that this term is not found to be indefinite, however, the same features and functionalities that Plaintiff identifies in the later Accused NetMotion Instrumentalities for this claim element in its infringement contentions are also disclosed by Hanson. Under Plaintiff's apparent understanding and interpretation of this term for purposes of infringement, Hanson thus anticipates "causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets."

taught by Hanson or used in the Prior Art NetMotion Instrumentalities ) in the same way (*i.e.*, to retain knowledge concerning the peer, session(s), and socket connection(s) to facilitate the resumption of communication sessions following the roaming of the mobile device from one network to a different network, in order to overcome the issue caused by the change in the mobile device's current, actual network address following such a network switch). (*See, e.g.*, Hanson at 2:6-13, 2:63-3:9; Sturniolo at 2:6-20, 2:66-3:12, 18:11-19:3.) Combining the teachings of the Prior Art NetMotion Instrumentalities, Hanson, and Sturniolo in this manner is thus merely a combination of prior art elements according to conventional, well-known methods to yield predictable results.

444. Accordingly, to the extent that the Accused NetMotion Instrumentalities include infringe the Asserted Claims, the Prior Art NetMotion Instrumentalities (alone and in the proposed combinations with Hanson and Sturniolo) anticipates and renders obvious the Asserted Claims.

**E. Dowling Anticipates and Renders Obvious (Alone and in the Proposed Combinations, both in view of the knowledge of a POSA) the Asserted Claims of the '437 Patent**

445. Dowling teaches methods that employ session layer protocols for maintaining persistent communication and application sessions between a remote unit and a virtual session server. As discussed below, Dowling's disclosures anticipate and render obvious (both alone and in the proposed combinations with Sturniolo) the Asserted Claims of the '437 patent.

Dowling at 1:7-12, 1:46-2:17, 2:66-3:6, 3:18-23, 3:36-44, 7:22-44, 12:65-13:20, 20:19-21:64, Fig. 5; Sturniolo at 2:6-20, 2:66-3:12, 18:11-19:3), a POSA would have been motivated to combine Sturniolo's teachings regarding the identifiers associated with a mobile device and its application sessions that are maintained by the gateway server in a session/virtual circuit table with Dowling's teachings regarding its virtual session server 215 and its session table 225.

**viii. Element 1[g]: "causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets"**

510. As I discuss in Section VII below, it is my opinion that the Asserted Claims are indefinite, as a POSA would not understand with reasonable certainty the scope claim element 1[g]. In particular (and as explained in more detail below) a POSA would not understand with reasonable certainty how "traffic … are directed by traffic," as recited by this claim element, as opposed to traffic being directed by network hardware and software.

511. To the extent that this term is not deemed be indefinite, however, the same features and functionalities that Plaintiff identifies in the Accused NetMotion Instrumentalities for this claim element in its infringement contentions are also disclosed, taught, and suggested by Dowling. Under Plaintiff's apparent understanding and interpretation of this term for purposes of infringement, Dowling thus discloses and renders obvious (alone and in combination) "causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic

1[g]. In particular (and as explained in more detail below) a POSA would not understand with reasonable certainty how "traffic … are directed by traffic," as recited by this claim element, as opposed to traffic being directed by network hardware and software.

687. To the extent that this term is not found to be indefinite, however, Ismailov and the Ismailov Article teach and render obvious (separately and together) "causing said first and said second session layers to use a common session protocol to ensure that traffic belonging to different first sockets in said first software components are directed by traffic intended for said second software components to different second sockets in said second software components uniquely corresponding to said different first sockets, and that traffic belonging to different second sockets in said second software components are directed by traffic intended for said first software components to different first sockets in said first software components uniquely corresponding to said different second sockets," under Plaintiff's apparent interpretation and application of this claim element for purposes of infringement. As discussed above, at bottom, Plaintiff appears to contend in its infringement contentions that a session protocol's use of sockets and the use of standard packet addressing and routing techniques, satisfies this claim element. These same techniques, systems, and methods are taught, suggested, and rendered obvious by Ismailov and the Ismailov Article.

688. As discussed above for claim elements 1[c] and 1[d], Ismailov teaches a common Session Management Protocol (SMP) to manage communication sessions and ensure that communicating applications receive the appropriate traffic/packets sent by the correspondent peer. Ismailov, for example, provides:

> In accordance with a preferred embodiment of the present invention, **a multilevel Session Management Protocol (SMP) is provided to support communications mobility in a telecommunications system.** A communications session is separated into two independent layers—a terminal session layer and an application session